# United States Court of Appeals
## For the First Circuit

No. 15-1177

HENRY BERNARDO, on behalf of M&K Engineering, Inc.;
SAMUEL MARINHO FREITAS; RUTH LOPES FREITAS; DANIEL LOPES
FREITAS; GRACIANE LOPES FREITAS; GRAZIELA LOPES FREITAS,

Plaintiffs, Appellants,

v.

JEH C. JOHNSON, Secretary,
United States Department of Homeland Security;
LORETTA LYNCH,* Attorney General; ALEJANDRO MAYORKAS, Director,
United States Citizenship and Immigration Service; GREGORY A.
RICHARDSON, Director, Texas Service Center; RON ROSENBERG,
Acting Chief, Administrative Appeals Office, United States
Citizenship and Immigration Service,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Howard, Chief Judge,
Lynch and Lipez, Circuit Judges.

Annelise Maia Jatoba de Araujo, with whom Araujo & Fisher,
LLC was on brief, for appellants.
Aaron S. Goldsmith, Senior Litigation Counsel, District Court
Section, Office of Immigration Litigation, United States

---

* Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Loretta E. Lynch has been substituted for former Attorney General Eric H. Holder, Jr.

Department of Justice, with whom Benjamin C. Mizer, Principal Deputy Assistant Attorney General, William C. Peachey, Director, District Court Section, Office of Immigration Litigation, and Jeffrey S. Robins, Assistant Director, District Court Section, Office of Immigration Litigation, were on brief, for appellees.

———————————————

January 29 2016

———————————————

**LYNCH**, **Circuit Judge**.  This case raises a question of first impression in our circuit: whether 8 U.S.C. § 1252(a)(2)(B)(ii), which precludes judicial review of the Attorney General's and the Secretary of Homeland Security's discretionary decisions under Title 8, Chapter 12, Subchapter II, applies to the revocation of visa petition approvals under 8 U.S.C. § 1155.  Taking the same view as most other circuits, we conclude that it does and so judicial review is precluded.

Title 8, section 1252 of the U.S. Code precludes judicial review of discretionary decisions made by the Attorney General and the Secretary of Homeland Security under Title 8, Chapter 12, Subchapter II.  8 U.S.C. § 1252(a)(2)(B)(ii).  Decisions made under that subchapter as to the revocation of previously approved visa petitions are made discretionary by statute.  8 U.S.C. § 1155. See Kucana v. Holder, 558 U.S. 233, 247 (2010) (explaining that "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute").  Because this statute is a clear expression of Congressional intent, we, like seven other circuits, conclude that Congress has barred judicial review.

I.

We confine our discussion of the facts to those necessary to frame the issue on appeal.  On February 11, 2004, M&K Engineering, Inc. ("M&K"), through its owner and president Henry

Bernardo, filed an Application for Employment Certification for Samuel Freitas to work as an Assistant Delivery Supervisor. After the Department of Labor granted the certification on October 11, 2006, M&K filed an I-140 Immigrant Petition for Alien Worker ("visa petition") for Freitas. The United States Citizenship and Immigration Services ("USCIS") initially approved the visa petition on March 13, 2007.[1]

On September 22, 2010, the Director of the USCIS Texas Service Center issued a Notice of Intent to Revoke ("NOIR") the approval of the visa petition. The NOIR alleged that M&K was "trying to circumvent Immigration Laws by committing Fraud" and requested additional information and documents. M&K submitted additional evidence in response. On November 15, 2010, the Director of the USCIS Texas Service Center issued a decision revoking the approval of the visa petition because "the evidence does not indicate that the beneficiary had met the minimum experience requirements prior to the filing of either labor certification; plus, the new evidence contradicts evidence already on the record." Bernardo, as owner of M&K, administratively appealed the revocation decision to the USCIS Administrative

---

[1] For a good discussion of the process of obtaining permanent residency and the role that an I-140 Immigrant Petition for Alien Worker, 8 U.S.C. § 1153(b), plays in that process, see Mantena v. Johnson, No. 14-2476-cv, 2015 WL 9487867, at *2 (2d Cir. Dec. 30, 2015). What is at issue here is the revocation of an I-140 visa petition approval.

- 4 -

Appeals Office ("AAO") on December 3, 2010. On June 28, 2013, the AAO affirmed the revocation decision and dismissed the appeal.

In July 2013, Bernardo, as owner of M&K, filed a complaint with the Massachusetts federal district court challenging the revocation of the visa petition approval. On November 12, 2013, the AAO withdrew its decision and reopened the matter sua sponte. It requested additional evidence, which M&K provided. After considering the evidence, on February 28, 2014, the AAO dismissed the appeal, finding again that there were inconsistencies in the evidence, and that M&K had failed to prove that Freitas had the necessary work experience. On March 28, 2014, the government filed a motion to dismiss the district court proceeding for lack of jurisdiction. After briefing, on December 8, 2014, the district court issued a memorandum and order granting the government's motion and dismissing the case for lack of subject matter jurisdiction. Bernardo v. Napolitano, No. 13-11827, 2014 WL 6905107 (D. Mass. Dec. 8, 2014). This appeal followed.

## II.

We review de novo a district court's order dismissing a case for lack of subject matter jurisdiction. McCloskey v. Mueller, 446 F.3d 262, 265-66 (1st Cir. 2006). "In doing so, [we] accept[] the well-pleaded factual allegations of the plaintiff's complaint and indulge[] all reasonable inferences in the

plaintiff's favor."  Dominion Energy Brayton Point, LLC v. Johnson, 443 F.3d 12, 16 (1st Cir. 2006).

Bernardo claims federal jurisdiction under, inter alia, § 702 of the Administrative Procedure Act ("APA"), which "confers a general cause of action upon persons 'adversely affected or aggrieved by agency action within the meaning of a relevant statute.'"  Block v. Cmty. Nutrition Inst., 467 U.S. 340, 345 (1984) (quoting 5 U.S.C. § 702).  However, § 701 of the APA "withdraws that cause of action to the extent the relevant statute 'preclude[s] judicial review.'"  Id. (alteration in original) (quoting 5 U.S.C. § 701(a)(1)).  Such is the case before us.[2]

The relevant statute, 8 U.S.C. § 1252(a)(2)(B)(ii), removes judicial review of the Attorney General's and the Secretary of Homeland Security's discretionary decisions made under Title 8, Chapter 12, Subchapter II of the U.S. Code:[3]

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland

---

[2]    The government states that it "is not arguing in favor of the application of 5 U.S.C. § 701(a)(2)."  Section 701(a)(2) withdraws the § 702 cause of action where "agency action is committed to agency discretion by law."  5 U.S.C. § 701(a)(2).  Because we decide our case under 5 U.S.C. § 701(a)(1), we do not discuss whether 5 U.S.C. § 701(a)(2) applies.

[3]    Subchapter II encompasses 8 U.S.C. §§ 1151-1381.

<u>Security</u>, other than the granting of relief under section 1158(a) of this title.

8 U.S.C. § 1252(a)(2)(B)(ii) (emphasis added).

The unambiguous language of § 1252(a)(2)(B)(ii) withdraws judicial review from decisions "the authority for which is specified . . . to be in the discretion of the . . . Secretary of Homeland Security."  <u>Id.</u>[4]  It is not contested that such decisions are not subject to judicial review.  So we must determine whether the decision to revoke a visa petition approval is specified to be in the Secretary of Homeland Security's discretion.

The visa petition approval was revoked pursuant to 8 U.S.C. § 1155.  Section 1155, which falls under Subchapter II, provides in relevant part:

> The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title.

---

[4]    We agree with Judge Tallman of the Ninth Circuit, and the Third, Fifth, Sixth, Seventh, Eighth, Tenth, and Eleventh Circuits that this is the pertinent language to be considered. <u>See</u> <u>Mehanna</u> v. <u>U.S. Citizenship & Immigration Servs.</u>, 677 F.3d 312, 314 (6th Cir. 2012); <u>Green</u> v. <u>Napolitano</u>, 627 F.3d 1341, 1343–44 (10th Cir. 2010); <u>Abdelwahab</u> v. <u>Frazier</u>, 578 F.3d 817, 821 (8th Cir. 2009); <u>Sands</u> v. <u>U.S. Dep't of Homeland Sec.</u>, 308 F. App'x 418, 419–20 (11th Cir. 2009) (per curiam); <u>Ghanem</u> v. <u>Upchurch</u>, 481 F.3d 222, 223 (5th Cir. 2007); <u>Jilin Pharm. USA, Inc.</u> v. <u>Chertoff</u>, 447 F.3d 196, 199–200 (3d Cir. 2006); <u>ANA Int'l Inc.</u> v. <u>Way</u>, 393 F.3d 886, 896 (9th Cir. 2004) (Tallman, J., dissenting); <u>El-Khader</u> v. <u>Monica</u>, 366 F.3d 562, 566 (7th Cir. 2004).

8 U.S.C. § 1155. We join seven of our sister circuits and conclude that this decision is discretionary, and so not subject to judicial review. See Mehanna v. U.S. Citizenship & Immigration Servs., 677 F.3d 312, 313 (6th Cir. 2012); Green v. Napolitano, 627 F.3d 1341, 1343 (10th Cir. 2010); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir. 2009); Sands v. U.S. Dep't of Homeland Sec., 308 F. App'x 418, 419-20 (11th Cir. 2009) (per curiam); Ghanem v. Upchurch, 481 F.3d 222, 223 (5th Cir. 2007); Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 200-05 (3d Cir. 2006); El-Khader v. Monica, 366 F.3d 562, 567-68 (7th Cir. 2004).[5] One panel majority in one circuit views the issue differently. See ANA Int'l Inc. v. Way, 393 F.3d 886, 893-95 (9th Cir. 2004) (holding, with one panel member dissenting, that under § 1155, "the authority of the Attorney General to revoke visa petitions is bounded by objective criteria,"

---

[5] In a recent decision, the Second Circuit held that federal courts have subject matter jurisdiction to review whether USCIS complied with any applicable procedural requirements in revoking a visa petition approval. Mantena, 2015 WL 9487867, at *6-7. This question is not before us, as Bernardo does not argue that USCIS failed to comply with any procedural notice requirements but rather challenges only the substantive revocation decision. The Second Circuit did say that it had previously stated in dicta that "the substance of the decision that there should be a revocation is committed to the discretion of the [Secretary]," id. at *5 (alteration in original) (quoting Firstland Int'l, Inc. v. U.S. INS, 377 F.3d 127, 131 (2d Cir. 2004)), and noted that the majority of circuits followed this position, id. However, because "the actual issue" before the Second Circuit was "a different one," it did not reach the question of whether the substantive decision to revoke a visa petition approval was reviewable. Id. at *6.

id. at 894, and so § 1252(a)(2)(B)(ii) does not remove judicial review).  Our dissenting colleague also views it differently.

We acknowledge the "presumption favoring interpretations of statutes [to] allow judicial review of administrative action." Kucana, 558 U.S. at 237 (alteration in original) (quoting Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 63-64 (1993)).  However, this "presumption . . . is just that -- a presumption. . . . [L]ike all presumptions used in interpreting statutes, [it] may be overcome by specific language or specific legislative history that is a reliable indicator of congressional intent." Block, 467 U.S. at 349; see also Mach Mining, LLC v. EEOC, 135 S. Ct. 1645, 1651 (2015).  Here we have specific language: § 1252(a)(2)(B)(ii) withdraws judicial review from decisions committed to the Secretary of Homeland Security's discretion, and § 1155 clearly indicates that the decision to revoke the approval of a visa petition is discretionary.

At least three language choices in § 1155 dictate this conclusion: "may," "at any time," and "for what he deems to be good and sufficient cause."  See Ghanem, 481 F.3d at 224; Jilin, 447 F.3d at 203-05 (identifying four indications by separating "deems to be" from "good and sufficient cause").  "By using the precatory term 'may,' rather than the directory term 'shall,' Congress indicated its intent to make [the decision] discretionary . . . ." United States v. Aponte-Guzmán, 696 F.3d

- 9 -

157, 160 (1st Cir. 2012); see also Haig v. Agee, 453 U.S. 280, 294 n.26 (1981) (explaining that "'may' expressly recognizes substantial discretion"). But see Zadvydas v. Davis, 533 U.S. 678, 697 (2001) ("But while 'may' suggests discretion, it does not necessarily suggest unlimited discretion.").[6]

Including "at any time" is also proof of Congress's intent to withhold judicial review. See Mehanna, 677 F.3d at 315;

---

[6] Zadvydas is clearly distinguishable from the case here. In Zadvydas, the relevant statute provided that "An alien ordered removed . . . may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision . . . ." 533 U.S. at 682 (second alteration in original) (quoting 8 U.S.C. § 1231(a)(6)). There, the question was whether the word "may" suggested Congress's intent to make this detention indefinite -- not whether the Attorney General's decision to detain was discretionary. Id. Accordingly, § 1252(a)(2)(B)(ii) did not apply. See id. at 688 ("The aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion."). Further, nothing in the statute suggested the length of the detention could be indefinite, and the only textual support for the government's argument was the word "may," see 533 U.S. at 682, 697. Here, we have not only the word "may" but also the phrases, "at any time" and "for what he deems to be good and sufficient cause."

To be sure, although "may" is usually interpreted as conferring discretionary authority, "[t]his common-sense principle of statutory construction is by no means invariable . . . and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute." United States v. Rodgers, 461 U.S. 677, 706 (1983). Here, however, there is no such indication, and the text of the statute, which also includes "at any time" and "for what he deems to be good and sufficient cause," further supports our conclusion that the decision is discretionary.

- 10 -

<u>Jilin</u>, 447 F.3d at 203; <u>El-Khader</u>, 366 F.3d at 567. As the Third Circuit explained, "the discretion to revoke 'at any time' had once been restricted by [a] now-defunct notice requirement" in the statute. <u>Jilin</u>, 447 F.3d at 203 (citing <u>Firstland Int'l, Inc.</u> v. <u>U.S. INS</u>, 377 F.3d 127, 132 (2d Cir. 2004); Intelligence Reform and Terrorism Prevention Act of 2004, Pub. L. No. 108-458, § 5304(c), 118 Stat. 3638, 3736). "Congress's elimination of this requirement strongly indicates an intent to strengthen the discretion of the Secretary of Homeland Security to revoke approval of petitions." <u>Id.</u>

Third, the language "for what [the Secretary] deems to be good and sufficient cause" makes clear that what constitutes "good and sufficient cause" is within the Secretary's discretion. <u>See</u> <u>Ghanem</u>, 481 F.3d at 224-25 (quoting <u>Webster's New Int'l Dictionary</u> 589 (3d ed. 1981) as defining "deem" as "to sit in judgment upon," and interpreting "the phrase 'for what he deems' as vesting complete discretion in the Secretary to determine what constitutes good and sufficient cause"). Together, these phrases in the statute determine the question of discretion. The 2010 Supreme Court case <u>Kucana</u> v. <u>Holder</u> supports this conclusion. <u>See</u> 558 U.S. at 246-47 (explaining that the language "any other

decision" in § 1252(a)(2)(B)(ii) refers to decisions "made discretionary by legislation").[7]

Bernardo and the dissent make much of footnote 10 of Kucana, which says, "the statutory proscription Congress enacted, § 1252(a)(2)(B)(ii), speaks of authority 'specified' -- not merely assumed or contemplated -- to be in the Attorney General's discretion," 558 U.S. at 243 n.10 (citing Webster's New Collegiate Dictionary 1116 (1974), which defined "specify" as "to name or state explicitly or in detail"). We think that § 1155's language, which includes that the Secretary "may, at any time, for what he deems to be good and sufficient cause," does clearly specify discretion. See Mehanna, 677 F.3d at 316 ("[S]ection 1155 'does not merely imply or anticipate that the Secretary has discretion to revoke' a visa petition, but explicitly 'authorizes revocation for what the Secretary "deems to be good and sufficient cause."'" (quoting Green, 627 F.3d at 1346)). Bernardo's argument to the contrary -- that "Congress did not specify that visa [petition] revocations are within the Secretary's discretion for purposes of stripping district courts of jurisdiction under 8 U.S.C. § 1252(a)(2)([B])(ii)" -- seems to rest on a notion that "specified" means that Congress must use the word "discretion" for

---

[7]     We reject the argument that the Board of Immigration Appeals' attempt to provide regulatory assistance in interpreting language is germane to our issue. See ANA Int'l Inc., 393 F.3d at 898 (Tallman, J., dissenting).

a decision to be discretionary, and so not subject to judicial review. But such a position is rejected by Kucana itself. As the Court noted, "Congress excepted from § 1252(a)(2)(B)(ii) 'the granting of relief under [§] 1158(a).'" Kucana, 558 U.S. at 247 n.13 (alteration in original). "Section 1158 concerns applications for asylum." Id. Notwithstanding the absence of the word "discretion" in the relevant provisions of § 1158, the Court explained that "[a]bsent the exception, asylum applicants might fall within § 1252(a)(2)(B)(ii)'s jurisdictional bar because a statutory provision, § 1158(b)(1)(A), specifies that 'the Attorney General may grant asylum.'" Id. (citing Zadvydas, 533 U.S. at 697, for the proposition that "'may' suggests discretion"). As the Court suggested, and we agree, statutory language can be "specified" even absent the use of the word "discretion." Accord ANA Int'l Inc., 393 F.3d at 898 (Tallman, J., dissenting) ("Though it might make our job a bit easier, we should not require our lawmakers to recite the words 'sole and unreviewable discretion' as some sort of talismanic incantation before we can conclude that a statute means what it says."); Mohammad v. Napolitano, 680 F. Supp. 2d 1, 6 (D.D.C. 2009).

Bernardo and the dissent's argument that "good and sufficient cause" imposes a non-discretionary legal standard that is subject to judicial review is also unavailing. Bernardo and the dissent argue that "good and sufficient cause" constitutes a

standard that meaningfully curtails the Secretary's discretion. Based on some decisions from the Board of Immigration Appeals ("BIA") and the AAO, the dissent posits that "good and sufficient cause" exists when "the evidence of record at the time the decision is rendered . . . would warrant a denial" of the visa petition. See, e.g., In re Ho, 19 I. & N. Dec. 582, 589-90 (BIA 1988); In re Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990); In re [Identifying Information Redacted by Agency], 2013 WL 5722884, at *6 (AAO Feb, 13, 2013).

We disagree with the premise that the phrase "good and sufficient cause" destroys the Secretary's discretion. We also demonstrate that the canons of construction do not support the dissent. As to both points, in the years preceding the most recent reenactment of § 1155, courts had multiple occasions to interpret that statute, including the phrase "good and sufficient cause." In doing so, a number of them concluded that "the determination of whether there exists 'good and sufficient cause' . . . necessarily is highly subjective, and there exist no strict standards for making this determination." El-Khader, 366 F.3d at 567; see also Systronics Corp. v. INS, 153 F. Supp. 2d 7, 11-12 (D.D.C. 2001) ("[N]o strict standards exist to determine when 'good and sufficient cause' is present. The standard seems highly subjective, much like 'good moral character' and 'extreme hardship.'"); cf. Firstland, 377 F.3d at 131 (suggesting that under

- 14 -

§ 1155, "the substance of the decision that there should be a revocation is committed to the discretion of the Attorney General"); Pierno v. INS, 397 F.2d 949, 950 (2d Cir. 1968) (observing that this section "is permissive; it grants the Attorney General discretion in determining what shall constitute good and sufficient cause and whether revocation of approval shall occur or be withheld in those cases where there is good and sufficient cause for revocation").[8]

The dissent nonetheless tries to show that the BIA had an understanding that its decision-making was non-discretionary and that Congress shared that understanding when it reenacted § 1155. The dissent invokes two related principles of statutory construction. First the dissent argues, when Congress uses a "term of art" in legislation, it "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." Molzof v. United States, 502 U.S. 301, 307 (1992) (quoting Morissette v. United States, 342 U.S. 246, 253 (1952)). The dissent suggests that "good and sufficient cause" constitutes a term of art, and that Congress

---

[8] The Seventh Circuit issued its opinion in El-Khader on April 29, 2004, and the Second Circuit issued its decision in Firstland on August 2, 2004. By contrast, Pub. L. No. 108-458 (the most recent reenactment of § 1155) was not enacted until December of that year.

- 15 -

obviously intended to incorporate its supposedly well-established meaning into § 1155 when it reenacted the statute.

However, the dissent misapplies the "term of art" canon. Even if "good and sufficient cause" would now constitute a "term of art" -- a proposition we do not accept -- this phrase was not a "term of art" at the time § 1155 was enacted in 1952. As the cases cited by the dissent make clear, we generally apply this rule of statutory construction with respect to concepts that are "well understood" at the time of a statute's enactment. Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995); see also Molzof, 502 U.S. at 307 ("Legal dictionaries in existence when the FTCA was drafted and enacted indicate that 'punitive damages' were commonly understood to be damages awarded to punish defendants for torts committed with fraud, actual malice, violence, or oppression." (emphasis added)); Sullivan v. Stroop, 496 U.S. 478, 483 (1990) ("Congress' use of 'child support' throughout Title IV shows no intent to depart from common usage.").

This, obviously, does not apply to the case at hand. The dissent's understanding of "good and sufficient cause" is rooted in a handful of decisions from the BIA that have been issued decades after the statute's enactment. The dissent does not suggest (nor could it) that "good and sufficient cause" had a longstanding or well-settled meaning at the time of § 1155's enactment.

- 16 -

And so the dissent next conflates the "term of art" canon with the doctrine of legislative ratification. The Supreme Court has explained, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978). The doctrine of legislative ratification would, at first glance, seem to be a much better fit for the dissent's argument: the BIA's understanding of "good and sufficient cause," while not a term of art, is nonetheless an administrative interpretation of a statute of which Congress might be presumed to be aware. And indeed, Congress reenacted § 1155 in 1996 and 2004 without disturbing the language of "good and sufficient cause" in the years since the BIA first set forth its interpretation of that phrase.

However, this canon of statutory interpretation is of no help to the dissent. For the legislative ratification canon to apply, two requirements must be met: (1) Congress must reenact the statute without change; and (2) "[t]he supposed judicial consensus [must be] so broad and unquestioned that we must presume Congress knew of and endorsed it." Jama v. Immigration & Customs Enf't, 543 U.S. 335, 349 (2005). Here, the second requirement is lacking.[9]

---

[9] As we explain below, the legislative ratification doctrine can apply to administrative interpretations as well. However, here, neither the judicial nor the administrative interpretations are sufficient to warrant use of this cannon.

There was certainly no "broad and unquestioned" judicial consensus that "good and sufficient cause" had the interpretation the dissent advocates, nor does the dissent argue as much. In fact, as we have discussed above, a number of courts had interpreted the determination of whether there was "good and sufficient cause" as a decision left to the Secretary's discretion.

Instead, the dissent points to BIA and AAO decisions as evidence Congress adopted the "agency's understanding of 'good and sufficient cause.'" These decisions are plainly insufficient to warrant the presumption that "Congress knew of and endorsed" such an understanding, id., of "good and sufficient cause." Cf. id. at 350 ("decisions of two Courts of Appeals" insufficient to establish judicial consensus); United States v. Powell, 379 U.S. 48, 55 n.13 (1964) (decisions of two district courts and two courts of appeals "represent[ed] neither a settled judicial construction . . . nor one which we could be justified in presuming Congress, by its silence, impliedly approved"). By the dissent's reasoning, if Congress is presumed to have been aware of the BIA and AAO's treatment of § 1155, it was undoubtedly aware of the judiciary's interpretations thereof as well. Which is to say that there was no "broad and unquestioned" consensus as to the meaning of "good and sufficient cause" the dissent proposes. See Jama, 543 U.S. at 349.

To be sure, the Supreme Court has suggested that Congressional reenactment of a statute that has been interpreted by an agency can provide "persuasive evidence that the [agency's] interpretation is the one intended by Congress." CFTC v. Schor, 478 U.S. 833, 846 (1986) (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 275 (1974)). However, the circumstances giving rise to such a situation do not present themselves here. Specifically, here we have no evidence that Congress was even aware of the purported administrative interpretation, let alone intended to adopt it. By contrast, in Schor, the CFTC had declared by regulation its interpretation. Id. at 845. Further, the subsequent legislative history provided "abundant evidence that Congress both contemplated and authorized" the CFTC's interpretation. Id. at 847. Similarly, in United States v. Board of Commissioners of Sheffield, Alabama, "the Attorney General's longstanding construction . . . was reported to Congress by Justice Department officials," 435 U.S. 110, 132 (1978), and "the legislative history of the re-enactment showed that Congress agreed with that interpretation," id. at 135. The dissent identifies nothing within the legislative history of § 1155 that suggests Congress was aware of the BIA and AAO's interpretations of "good and sufficient cause." Cf. Massachusetts v. FDIC, 102 F.3d 615, 620-21 (1st Cir. 1996) ("Congress is often deemed to have adopted an agency's interpretation of a statute when, knowing

- 19 -

of the agency interpretation, it reenacts the statute without significant change." (emphasis added)).[10]

Instead, the dissent merely assumes that Congress was aware of some BIA and AAO decisions when reenacting § 1155. As we have discussed, there is no basis for making such an assumption here. Cf. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 336 n.7 (1971) ("[The respondent] can point to no direct evidence that Congress ever considered the issue now before us or voiced any views upon it; on the contrary, it appears that Congress left the matter for authoritative resolution in the courts."); Zuber v. Allen, 396 U.S. 168, 185 n.21 (1969) ("Where, as in the case before us, there is no indication that a subsequent Congress has addressed itself to the particular problem, we are unpersuaded that silence is tantamount to acquiescence, let alone the approval discerned by the dissent.").

---

[10] Indeed, the dissent's oblique attempt to suggest that "Congress was uniquely aware of the phrase 'good and sufficient cause' as a term of art" assumes its own conclusion. The dissent points out that while the terms "good cause," "reasonable cause," and "sufficient cause" are found elsewhere in the Immigration and Nationality Act, "good and sufficient cause" is unique to § 1155. Ergo, the dissent argues, Congress's decision not to change the unique phrase "good and sufficient cause" when it reenacted § 1155 "reinforces the conclusion that Congress understood 'good and sufficient cause' as a term of art in the visa revocation context." This reasoning, that Congress "was uniquely aware of the phrase 'good and sufficient cause' as a term of art" because "it clearly knew how to depart from the term's uniquely associated meaning" and did not do so, assumes its own conclusion -- that Congress knew the phrase "good and sufficient cause" had unique meaning.

Absent evidence Congress was aware of the administrative interpretations, it is significant that we lack any affirmative indication from Congress that it intended to ratify these interpretations. We have explained that it is generally inappropriate to apply the doctrine of legislative ratification without some evidence that Congress affirmatively sought to ratify the interpretation of a statute -- particularly when, as here, an ambiguous term lacks a widely accepted meaning and we lack any indication that Congress was even aware of the administrative interpretation suggested.[11] In Molina v. INS, in an opinion written by then-Chief Judge Breyer, we explained that "Congressional reenactment of statutory language does not normally or automatically indicate a legislative intent to freeze all pre-existing agency interpretations of language, forever after immunizing them from change." 981 F.2d 14, 23 (1st Cir. 1992); see also ACLU v. Clapper, 785 F.3d 787, 819 (2d Cir. 2015) ("[I]n the case of an administrative interpretation of a statute, for the doctrine of legislative ratification to apply, we must first 'ascertain whether Congress has spoken clearly enough to constitute acceptance and approval of an administrative

---

[11] We do not hold this is a doctrinal requirement, as the dissent suggests we do, but rather that when there is no indication that Congress was even aware of the administrative interpretation of a phrase, it is generally not appropriate to assume Congress intended to ratify an interpretation absent an affirmative indication.

interpretation. Mere reenactment is insufficient.'" (quoting

Isaacs v. Bowen, 865 F.2d 468, 473 (2d Cir. 1989))); Ass'n of Am.

R.R.s v. Interstate Commerce Comm'n, 564 F.2d 486, 493 (D.C. Cir.

1977) ("The Supreme Court has indicated that in order to bring

this 'doctrine of reenactment' into play, Congress must not only

have been made aware of the administrative interpretation, but

must also have given some 'affirmative indication' of such

intent."). Accordingly, given the complete lack of evidence that

Congress was aware of the BIA and AAO's interpretation of "good

and sufficient cause," let alone affirmatively intended to ratify

it, we are hard-pressed to conclude that a legislative ratification

took place.[12]

---

[12] The foregoing also demonstrates why the dissent's reliance on Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran, 456 U.S. 353 (1982), is misplaced. In Curran, the Supreme Court considered whether reenactment of a statute evinced Congressional intent to preserve a preexisting interpretation of that statute. Id. at 379-82. And as the dissent notes, the Court held that "the fact that a comprehensive reexamination and significant amendment of the [statute] left intact the statutory provisions [at issue] . . . is itself evidence that Congress affirmatively intended to preserve that [interpretation by an agency]." Id. at 381-82. However, the dissent omits the critical fact that the interpretation in question was "uniform and well understood." Id. at 380. Similarly, as the Supreme Court noted, "it is abundantly clear that [this interpretation] was a part of the 'contemporary legal context' in which Congress legislated." Id. at 381. Accordingly, the Court held, "[i]n that context," Congress's decision to retain the relevant provisions could be taken as evidence of its affirmative intent to preserve the interpretation. Id. (emphasis added). Here, however, the BIA's interpretation of "good and sufficient cause" was neither well understood nor a widely accepted part of the contemporary legal landscape. Congress's decision to retain "good and sufficient cause" (i.e.,

In sum, "good and sufficient cause" is not a term of art, much less does it establish that the Secretary's decision is non-discretionary. Further, there is no basis to assume that Congress shared that understanding when it reenacted § 1155. Thus, the dissent is incorrect to conclude that the Secretary's discretion is bounded by "objective criteria," or a legal standard that could be applied by a reviewing court. The statute provides no such standard, and there is no indication that Congress intended to so constrain the Secretary's discretion.

Moreover, Bernardo and the dissent's argument focuses on the words "good and sufficient cause" at the expense of the words "for what he deems to be." We are not free to do so. See Regions Hosp. v. Shalala, 522 U.S. 448, 467 (1998) ("It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word." (quoting Wash. Mkt. Co. v. Hoffman, 101 U.S. 112, 115 (1879))). As the Third Circuit explained, "[t]he phrase 'for what [the Secretary] deems to be good and sufficient cause,' cannot be modified by judicial fiat to read the naked words, 'for good and sufficient cause.'" Jilin, 447 F.3d at 204 (second alteration in original). The language "for what [the Secretary] deems to be good and sufficient cause"

---

even as it modified other portions of § 1155) is not affirmative evidence of its intent to ratify the BIA's standard, let alone its awareness of the administrative interpretation.

makes clear that what constitutes "good and sufficient cause" is within the Secretary's discretion.  See Ghanem, 481 F.3d at 224–25.[13]

Our reading mirrors a conclusion reached by the Supreme Court in Webster v. Doe, 486 U.S. 592 (1988).  In Webster, the Court examined § 102(c) of the National Security Act of 1947:

> [T]he Director of Central Intelligence may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests of the United States . . . .

Id. at 594 (alterations in original) (quoting 50 U.S.C. § 403(c)(1947)).[14]  The Court read that statute to remove judicial review under APA § 701(a)(2), which precludes judicial review where agency action is "committed to agency discretion by law."  Id. at 599–601.[15]  It explained:

---

[13]    It is for this reason that the dissent's statement, "[i]f 'good and sufficient cause' provides a legal standard that circumscribes the Secretary's visa revocation decision, the decision is subject to judicial review," sets out a straw man.

[14]    The dissent tries to distinguish Webster based on the words "in his discretion" in the National Security Act.  However, Webster addressed the question of whether the clause "whenever he shall deem such termination necessary or advisable in the interests of the United States" provided criteria that could limit this discretion -- a question the Court answered in the negative.  See 486 U.S. at 600.

[15]    Webster was decided under 5 U.S.C. § 701(a)(2), whether "agency action is committed to agency discretion by law," while Bernardo's case is a question of whether § 1252(a)(2)(b)(ii) precludes judicial review under APA § 701(a)(1).  See supra note

> [Section] 102(c) allows termination of an Agency employee whenever the Director "shall <u>deem</u> such termination necessary or advisable in the interests of the United States" (emphasis added), not simply when the dismissal <u>is</u> necessary or advisable to those interests. This standard fairly exudes deference to the Director, and appears to us to foreclose the application of any meaningful judicial standard of review.

<u>Id.</u> at 600 (quoting 50 U.S.C. § 403(c) (1947));[16] <u>cf.</u> <u>Fed. Energy Admin.</u> v. <u>Algonquin SNG, Inc.</u>, 426 U.S. 548, 561 (1976) ("In authorizing the President to 'take such action, and for such time, as he deems necessary to adjust the imports of [an] article and its derivatives,' the language of [the statute] seems clearly to grant him a measure of discretion in determining the method to be used to adjust imports.").

Bernardo and the dissent's argument that <u>Kucana</u> v. <u>Holder</u> changes the analysis also fails. In <u>Kucana</u>, the Court was faced with a regulation that provided, in relevant part, that "[t]he decision to grant or deny a motion to reopen . . . is within

---

2. However, we must still determine whether § 1155 is discretionary because § 1252(a)(2)(B)(ii) precludes review of discretionary decisions. Therefore, the analysis of whether under a statute, "agency action is committed to agency discretion by law," would apply to the question of whether § 1155 is discretionary.

[16] To the extent the dissent attempts to distinguish <u>Webster</u> by saying "in the interests of the United States" is "a policy-driven assessment," while "good and sufficient cause" is "predicated on binary outcomes," that argument fails. As we have previously explained, the dissent's claim that "good and sufficient cause" has objective meaning is incorrect.

the discretion of the Board [of Immigration Appeals]." 558 U.S. at 239 (second alteration in original) (quoting 8 C.F.R. § 1003.2(a)). Examining this regulation, the Court addressed the question of "whether the proscription of judicial review stated in § 1252(a)(2)(B) applies not only to Attorney General determinations made discretionary by statute, but also to determinations declared discretionary by the Attorney General himself through regulation." Id. at 237. The Court's conclusion that § 1252(a)(2)(B)(ii)'s language "specified under this subchapter" includes "statutory, but not . . . regulatory, specifications," id., was based on several considerations: "the longstanding exercise of judicial review of administrative rulings on reopening motions," id.; "the text and context of § 1252(a)(2)(B)," id.; "the history of the relevant statutory provisions," id.; "the 'presumption favoring interpretations of statutes [to] allow judicial review of administrative action,'" id. (alteration in original) (quoting Reno, 509 U.S. at 63–64); and "[s]eparation-of-powers concerns, [which] caution us against reading legislation, absent clear statement, to place in executive hands authority to remove cases from the Judiciary's domain," id.

The dissent sua sponte focuses on the Court's second consideration, § 1252(a)(2)(B)'s structure.[17] The dissent

---

[17] Bernardo does not develop this argument in his brief; he raised it for the first time at oral argument. It is waived.

- 26 -

correctly points out that the Supreme Court stated, "[t]he proximity of clauses (i) and (ii), and the words linking them -- 'any other decision' -- suggests that Congress had in mind decisions of the same genre," id. at 246. The dissent relies on that sentence to argue that because revocation of a visa petition approval under § 1155 is not a decision "of the same genre" as those listed in § 1252(a)(2)(B)(i), it is not encompassed by § 1252(a)(2)(B)(ii) at all. However, the dissent omits the crucial end of that sentence, "i.e., those made discretionary by legislation." Id. at 246-47. Indeed, the Court goes on to say, "[r]ead harmoniously, both clauses convey that Congress barred review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute." Id. at 247. To the extent the Court lists the types of decisions within "the character of the decisions Congress enumerated in § 1252(a)(2)(B)(i)," id., it was doing so to set up a contrast with motions to reopen, which it described as "procedural device[s] serving to ensure 'that aliens [a]re getting

---

United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). The dissent is incorrect to make an argument waived by the appellants and to which the appellees had no occasion to reply. The dissent counters that our rule of waiver is "not so broad as to encompass 'legal theories.'" However, our case law is quite settled on this point: "[i]t is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." Id.

- 27 -

a fair chance to have their claims heard,'" id. at 248 (second alteration in original) (quoting Tr. of Oral Arg. 17). The question of whether revocations of visa petition approvals are of "a like kind" was not before the Court, nor did it purport to address it. Id. at 246–48.[18]

Finally, our conclusion does not lead to a "senseless proposition," as Bernardo and the dissent suggest. Some visa petition approval decisions, in particular, for certain preference visas, have been held subject to judicial review. See, e.g., Soltane v. U.S. Dep't of Justice, 381 F.3d 143, 146–48 (3d Cir. 2004) (holding there is judicial review of denials of visa petitions under 8 U.S.C. § 1153(b)(4), which provides that "[v]isas shall be made available . . . to qualified special immigrants"); Spencer Enters., Inc. v. United States, 345 F.3d 683, 692 (9th Cir. 2003) (concluding "that § 1252(a)(2)(B)(ii) does not preclude judicial review of the decision whether to issue a visa pursuant to [8 U.S.C.] § 1153(b)(5)"). Our dissenting colleague argues that if there is judicial review of the decision not to grant a visa petition to start with, then it would be anomalous to deny judicial review of decisions to revoke petition approvals. However, the argument works the other way.

---

[18] As the issue is waived, we decline to reach it. We note, however, that this matter is far less clear-cut than the dissent makes it out to be.

- 28 -

As an initial matter, assuming initial visa petition denials are reviewable, the language as to the authority to grant preference visas is substantially different than the language as to the authority to revoke visa petition approvals. Compare, e.g., 8 U.S.C. § 1153(b)(2)-(5) ("Visas shall be made available . . . . (emphasis added)), and 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case, and after consultation with the Secretary of Labor . . . the Attorney General shall . . . approve the petition . . . . (emphasis added)),[19] with 8 U.S.C. § 1155 ("The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title."). Indeed, "Congress' use of the permissive 'may' in [§ 1155] contrasts with the legislators' use of a mandatory 'shall' in the" preceding sections. Lopez v. Davis, 531 U.S. 230, 241 (2001). The difference in these language choices supports our conclusion that Congress intended to treat visa petition denials and

---

[19] The language of 8 U.S.C. § 1153(b)(4) has been well analyzed by the Third Circuit in Soltane, which concluded that the Attorney General's action of granting preference visas was not discretionary. 381 F.3d at 146-48. The Third Circuit thus held that denial of a visa petition under § 1153(b)(4) was subject to judicial review. Id.

We have not surveyed all visa approval statutes, nor have the parties briefed the issue. There are at least seven different types of visa petitions, including at least three different types of employment-based visa petitions.

revocations of visa petition approvals differently.[20] Cf. Barnhart
v. Sigmon Coal Co., 534 U.S. 438, 452 (2002) ("[I]t is a general
principle of statutory construction that when 'Congress includes
particular language in one section of a statute but omits it in
another section of the same Act, it is generally presumed that
Congress acts intentionally and purposely in the disparate
inclusion or exclusion.'" (quoting Russello v. United States, 464
U.S. 16, 23 (1983))).

In any event, the so-called "inconsistency" of allowing
judicial review of certain visa petition denials but not the
revocation of visa petition approvals does not undermine our
conclusion that that is what Congress intended. See Jilin, 447
F.3d at 205 n.11 (explaining that "§ 1252(a)(2)(B) is one of 'many
provisions of [the Illegal Immigration Reform and Immigrant
Responsibility Act of 1996 that] are aimed at protecting the
Executive's discretion from the courts -- indeed, that can fairly
be said to be the theme of the legislation,'" id. (quoting Reno v.
Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 486 (1999)); and
that "Congress [in 2004 and 2005] expanded administrative
discretion by removing the notice requirement under § 1155 and by
establishing that § 1252(a)(2)(B)(ii) applies beyond removal

---

[20]    Because of this disparate language and context, the
cases cited by the dissent do not undermine -- and if anything
support -- our conclusion.

proceedings," id.; and so "there is ample reason to believe that Congress could have intended to bolster the discretion of the Secretary of Homeland Security to revoke approval of petitions," id.).[21] Congress has to structure and allocate the resources of our immigration system. As such, judicial review may be thought to be warranted in some, but not all, situations. Further, we note that petitioners have an opportunity to respond to the NOIR, receive an explanation of why the petition's approval was revoked, and are afforded an administrative appeal. See 8 C.F.R. § 205.2 (requiring notice of intent to revoke, the opportunity for the petitioner to offer evidence supporting the petition, an explanation of "the specific reasons for the revocation," and the opportunity for the petitioner to file an administrative appeal). Congress could quite sensibly have concluded that is enough.[22]

---

[21] We are unaware of any longstanding tradition of judicial review of the revocation of visa petition approvals. Cf. Kucana, 558 U.S. at 237. To be sure, there may have been isolated examples of judicial review of these decisions prior to the enactment of § 1252(a)(2)(B). See, e.g., Tongatapu Woodcraft Hawaii, Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984); Joseph v. Landon, 679 F.2d 113, 115-16 (7th Cir. 1982) (per curiam). However, we have been presented with no evidence that Congress would be changing a well-established practice by eliminating judicial review over these decisions.

[22] We note that § 1252(a)(2)(D) provides that "[n]othing in subparagraph (B) . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D). Bernardo does not argue that we have jurisdiction under § 1252(a)(2)(D).

### III.

For the reasons set forth above, the order of the district court is <u>affirmed</u>.

**-Dissenting Opinion Follows-**

**LIPEZ**, **Circuit Judge, dissenting.** The majority holds that a decision by the Secretary of Homeland Security ("Secretary") to revoke his prior approval of a visa petition based on objective criteria is insulated from judicial review. In my view, the Secretary's visa revocation decision is subject to judicial review because the text of the pertinent statutes, the nature of the visa revocation decisions, and the overall statutory scheme do not rebut the presumption of judicial review applicable to immigration statutes. Hence, I respectfully dissent.

**I.**

The two statutory provisions at issue are 8 U.S.C. §§ 1252(a)(2)(B) and 1155 of the Immigration and Nationality Act ("INA"). Section 1252(a)(2)(B) provides that "no court shall have jurisdiction to review":

> (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title; or

> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

The authority to revoke the approval of a visa petition is provided under § 1155. Section 1155 -- which is not listed in § 1252(a)(2)(B)(i) -- states that "[t]he Secretary of Homeland Security may, at any time, for what he deems to be good and

- 33 -

sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." Id. § 1155. The approval of a visa petition, which determines only the beneficiary's eligibility to apply for an immigrant visa, is governed by § 1154. Hence, the question is whether § 1252(a)(2)(B)(ii) applies to § 1155 -- that is, whether Congress "specified" visa revocation decisions "to be in the discretion" of the Secretary with the use of the words "may," "at any time," "deems," and "good and sufficient cause."

In considering a dispute over the jurisdiction-stripping effect of an immigration statute, we must apply "a strong presumption in favor of judicial review of administrative action." INS v. St. Cyr, 533 U.S. 289, 298 (2001); see also McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 498 (1991). Where the statute leaves "substantial doubt about the congressional intent," Block v. Comty. Nutrition Inst., 467 U.S. 340, 351 (1984), or even "is reasonably susceptible to divergent interpretation," Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 434 (1995), the presumption that "executive determinations generally are subject to review" controls, id.

The Supreme Court's recent construction of § 1252(a)(2)(B) in Kucana v. Holder, 558 U.S. 233 (2010), further informs our analysis. In that case, the Court observed that § 1252(a)(2)(B)(ii) "speaks of authority 'specified' -- not merely

- 34 -

assumed or contemplated -- to be in the [Secretary's] discretion."
Id. at 243 n.10.  "Specified," according to the Court, is "not
synonymous with 'implied' or 'anticipated'"; rather, it means "to
name or state explicitly or in detail."  Id. (quoting Webster's
New Collegiate Dictionary 1116 (1974)).  Thus, pursuant to Kucana,
in resolving a dispute over the applicability of
§ 1252(a)(2)(B)(ii), any statutory language that falls short of
"state explicitly" -- whether an "assum[ption]" or a
"contemplat[ion]" of, or a statement that merely "implie[s]" or
"anticipate[s]," an exercise of discretion by the Secretary --
fails to overcome the presumption in favor of judicial review.

**II.**

Statutory interpretation begins with the text of the
provision at issue.  See, e.g., Conn. Nat'l Bank v. Germain, 503
U.S. 249, 253-54 (1992).  While § 1155 includes the words "may,"
"at any time," and "deems," which suggest an exercise of
discretion, the provision also cabins these words with the phrase
"good and sufficient cause."  If "good and sufficient cause"
provides a legal standard that circumscribes the Secretary's visa
revocation decision, the decision is subject to judicial review.
This is so because the presence of an objective legal standard in
§ 1155 casts doubt on whether Congress "specified" the revocation
decision to be discretionary.  To put it differently, where the
cumulative effect of "may," "at any time," "deems," and "good and

sufficient cause" is "'reasonably susceptible'" to the interpretation that Congress merely "anticipated" visa revocation decisions to be discretionary, rather than "state[d] [so] explicitly," Kucana, 558 U.S. at 251, 243 n.10 (internal quotation marks omitted), the presumption of judicial review should govern, and the visa revocation decisions should be subject to review. Accordingly, the Secretary's revocation decisions are subject to judicial review if (i) "good and sufficient cause" has an established meaning that supplies objective criteria for revoking the prior approval of a visa petition, and (ii) the meaning of the term withstands the surrounding language -- "may," "at any time," and "deems" -- in § 1155. The text and the structure of the relevant statutory provisions demonstrate both.

## A. Text

### 1. "Good and Sufficient Cause"

#### a. Objective Legal Criteria of "Good and Sufficient Cause"

An examination of the agency's visa revocation decisions reveals that "good and sufficient cause" has a clear objective meaning under § 1155. In Matter of Ho, the Board of Immigration Appeals ("BIA") ruled that "good and sufficient cause" exists under § 1155 when "the evidence of record at the time the decision is rendered . . . would warrant [a] denial" of the visa petition. 19 I. & N. Dec. 582, 590 (BIA 1988) (citing Matter of Estime, 19

I. & N. Dec. 450, 452 (BIA 1987)); see also Matter of Tawfik, 20 I. & N. Dec. 166, 167 (BIA 1990). A denial of a visa petition is in turn "warrant[ed]" when the petitioner has failed to show evidence of the beneficiary's (or petitioner's) qualifications necessary for approval. See 8 U.S.C. § 1154(b) (providing that the Attorney General "shall" approve a visa petition when he determines that the facts stated in the petition are true and the eligibility criteria are met); id. § 1153(b)(3)(A) (providing that visas "shall be made available" for a "skilled worker" upon satisfaction of specified conditions); 8 C.F.R. § 204.5 (specifying the required qualifications for employment-based visa petitions). Accordingly, the agency may revoke a visa petition under § 1155 only when the evidence necessary for approval is lacking, and hence a denial is warranted.

Such evidence consists of objective documentation. As to employment-based visa petitions, the evidence comprises documents substantiating the beneficiary's prior employment and educational background, as described either in the labor certification[23] or in the agency regulations and guidance. See 8 C.F.R. § 204.5; Instructions for Petition for Alien Worker (USCIS

---

[23] The labor certification -- which is filed by the employer and approved by the Department of Labor -- specifies, among other things, the minimum educational and prior work experiences required of the beneficiaries of certain employment-based visa petitions. These minimum qualifications are pre-determined by the employer. See ETA Form 9089, at 6-7.

2015) (hereinafter "I-140 Petition Manual"); see also Stewart Infra-Red Commissary of Mass., Inc. v. Coomey, 661 F.2d 1, 5-6 (1st Cir. 1981) (holding that, where applicable, the terms of the labor certification are binding on the agency in terms of which qualifications need to be shown).

For example, for a "skilled worker" visa petition, such as the one filed on behalf of Freitas, the petitioner must submit documents demonstrating the beneficiary's "education[], training, or experience" as stipulated in the labor certification. 8 C.F.R. § 204.5(l)(3)(ii)(B); I-140 Petition Manual, at 4 (Entry 6). The labor certification further breaks down each of the qualification areas (roughly) into duration -- e.g., duration of the beneficiary's highest formal education and prior work, specified by the employer as necessary for the job -- and nature of the experience -- e.g., description of the prior job title and work duties, which the employer has also specified as necessary for the requested position.[24] See ETA Form 9089, at 6-8 ("J. Alien Information" & "K. Alien Work Experience").

_____

[24] Employment visas that do not require labor certification and are thus governed only by the criteria set forth in the agency regulations are also approved based on similarly objective evidence. For example, for a visa petition for "an alien of extraordinary ability in the sciences, arts, education, business or athletics," 8 C.F.R. § 204.5(h)(1), the agency approves the petition upon a showing of the following evidence: (1) receipt of "a major, international recognized award"; or (2) at least three of the specified qualifications, including "authorship of scholarly articles," "display of the alien's work in the field at

Accordingly, in assessing whether there is "good and sufficient cause" to revoke an employment-based visa petition, the agency examines, for instance, letters from employers and other similar documentation to determine whether the beneficiary has the requisite qualifications. See 8 C.F.R. § 204.5(l)(3)(ii)(A); see also In re [Identifying Information Redacted by Agency [hereinafter "[IIRA]"], 2014 WL 3951145, at *3-6 (AAO Jan. 3, 2014) (finding that the record fails to support "the beneficiary's claimed high school attendance" and "the required two years of [prior work] experience"); In re [IIRA], 2012 WL 8526515, at *8-9 (AAO Aug. 27, 2012) (affirming the revocation, inter alia, because "the petitioner did not submit evidence that the beneficiary has the education required by the terms of the labor certification"). Here, similarly, the agency revoked the prior approval of the visa petition filed on behalf of Freitas because the inconsistent documents did not evidence the "two years of experience in the offered position or the related occupation of 'Manager/Supervisor,'" Appellants' Add. at 10, 13-18 -- a fact that would have "warranted [] denial" in the first place.[25] Matter of Ho, 19 I. & N. Dec. at 590.

_____

artistic exhibitions or showcases," and "evidence of commercial successes in the performing arts." Id. § 204.5(h)(3), (h)(3)(vi), (vii), (x); see also I-140 Petition Manual, at 2 (Entry 1).

[25] In fact, in affirming the revocation of Freitas's visa petition, the Administrative Appeals Office explicitly relied on the lack of "objective evidence" to corroborate his prior

Objective legal criteria also govern family-based visa petitions approved under § 1154. In determining the necessary familial relationships, the agency relies on objective documentation, such as a marriage certificate or a birth certificate. 8 C.F.R. § 204.2; see also Instructions for Form I-130, Petition for Alien Relative, at 2 (USCIS 2015). Further, where the denial of visa petitions turns on the validity of a marriage, see 8 U.S.C. § 1154(c), the agency examines the relevant evidence under the "substantial and probative" standard. Matter of Tawfik, 20 I. & N. Dec. at 167. Indeed, with the benefit of the applicable legal standard and objective factual evidence, numerous courts have reviewed the agency's denials of visa petitions based on marriage fraud. See Gupta v. U.S. Att'y Gen., No. 6:13-cv-1027-Orl-40KRS, 2015 WL 5687853, at *10-11 (M.D. Fla. July 7, 2015) (applying Matter of Tawfik in reviewing the denial of a visa petition based on marriage fraud); Zemeka v. Holder, 989 F. Supp. 2d 122, 129-130 (D.D.C. 2013) (applying the "substantial and probative" standard in reviewing the denial of a petition based

---

employment. See Appellants' Add. at 11 ("These inconsistencies are not resolved by independent, objective evidence, and diminish the reliability of the evidence in support of the beneficiary's qualifying work experience."); id. at 8 ("The AAO issued a Request for Evidence (RFE) to the petitioner seeking additional information relating to the beneficiary's employment, allowing the petitioner an additional opportunity to address the outlined inconsistencies in the record and to submit independent objective evidence to overcome such deficiencies.").

on marriage fraud); <u>Matter of Arias</u>, 19 I. & N. Dec. 568, 569-71 (BIA 1988) (reversing a revocation decision based on marriage fraud because, under the "good and sufficient cause" standard, "[s]pecific, concrete facts are meaningful, not unsupported speculation and conjecture").

### b. Congress's Adoption of the Objective Legal Criteria Established by "Good and Sufficient Cause"

The fact that the agency has interpreted "good and sufficient cause" as prescribing objective legal criteria is, of course, only an antecedent to the determination that Congress shared that interpretation of § 1155. Here, the relevant legislative background provides the bridge. It is a "cardinal rule of statutory construction" that, when Congress employs a term of art, it "presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken." <u>Molzof</u> v. <u>United States</u>, 502 U.S. 301, 307 (1992) (quoting <u>Morissette</u> v. <u>United States</u>, 342 U.S. 246, 263 (1952)). The "absence of contrary direction may be taken as satisfaction with widely accepted definitions, not as a departure from them." <u>Morissette</u>, 342 U.S. at 263. Where, as demonstrated below, Congress has reenacted the relevant statute against the backdrop of a long-standing agency interpretation of that statute, the related canon of legislative ratification also applies. That is, "Congress is presumed to be aware of an administrative or

- 41 -

judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978).

The two canons of statutory interpretation apply in tandem in this case. The "good and sufficient cause" standard, as defined in Matter of Estime and Matter of Ho, see supra Section II.A.1.a, has consistently been applied by the agency in decisions involving visa petition denials and revocations. See Matter of Tawfik, 20 I. & N. Dec. at 167; In re [IIRA], 2006 WL 5914903, at *3 (AAO Dec. 11, 2006); In re [IIRA], 2008 WL 4968848, at *1 (AAO July 18, 2008); In re [IIRA], 2009 WL 4873892, at *2-3 (AAO Aug. 11, 2009); In re [IIRA], 2011 WL 9082056, at *2-3 (AAO Dec. 13, 2011); In re [IIRA], 2013 WL 5722884, at *6 (AAO Feb. 13, 2013). Since those decisions, Congress has revisited § 1155 twice, first in 1996 when Congress enacted § 1252(a)(2)(B) as part of the comprehensive Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), and most recently in 2004. See Pub. L. No. 104-208, § 308(g)(3)(A), 110 Stat. 3009-622 (1996); Pub. L. No. 108-458, § 5304(c), 118 Stat. 3638, 3736 (2004). In the 2004 reenactment, Congress took a closer look at the language of § 1155, removing two sentences from the section that required prior notice to the petitioner, while keeping intact the phrase "good and sufficient cause." See 118 Stat. at 3736.

The consistent agency application of "good and sufficient cause" prior to the reenactments of § 1155 suggests that the phrase was understood as a term of art in the immigration context, and particularly with respect to visa petitions. Indeed, contrary to the majority's argument, "good and sufficient cause" need not have been rooted in "centuries of practice" to be deemed a "term of art" in the relevant statutory context. In Sullivan v. Stroop, 496 U.S. 478, 482 (1990), the Supreme Court held that the phrase "child support," which appeared in a statute undefined, is a "term of art" because it has an accepted meaning in common legal usage and amongst "[a]ttorneys who have practiced in the area of domestic relations law." Similarly, in Gustafson v. Alloyd Co., 513 U.S. 561, 575-76 (1995), the Court held that the word "prospectus" is a "term of art" because it has a "well understood" meaning in the relevant area of law (securities law), even though the statute in which the word appears defined the word more generally than the particularized meaning associated with that term of art. The Court thus adopted that term-of-art meaning of the word. These cases indicate that, where a phrase has a unique, well-understood meaning within the relevant statutory context, the phrase need not have been rooted in "centuries of practice" in the common law for Congress to understand it as a term of art.[26]

---

[26] When viewed in proper context, therefore, the core of the rule articulated in Morissette -- that Congress is presumed to be

- 43 -

Here, we have good reasons to assume that, at the relevant points in time, Congress was aware of the particularized meaning of "good and sufficient cause," as interpreted and applied by the agency. First, unlike in Molina v. INS, 981 F.2d 14, 23 (1st Cir. 1992) (Breyer, C.J.), where we were hesitant to apply the legislative ratification canon because the agency interpretation of the statute was "unclear," the "good and sufficient cause" standard has consistently been applied by the agency since Matter of Estime and Matter of Ho. Second, there is contextual evidence that Congress was uniquely aware of the phrase "good and sufficient cause" as a term of art in § 1155. Section 1155 is the only provision of the INA in which "good and sufficient cause" is used, while other provisions in the statute reference standards drawn from the term's "constituent words," such as "good cause," "reasonable cause," or "sufficient cause,"

---

aware of the meaning associated with a term of art used in a statute, 342 U.S. at 263 -- is not the "centuries of practice," but the assumption that Congress is "aware of existing law when it passes legislation," and especially when the legislation uses a phrase that is uniquely associated with a particular, well-known meaning. Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990); accord Cannon v. Univ. of Chi., 441 U.S. 677, 696-97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law[.]"). Indeed, while the majority criticizes the "assumption" that Congress was aware of the agency interpretation of "good and sufficient cause," the applicable statutory canons reflect precisely such an assumption of congressional awareness.

often with repetition.[27]  See Sullivan, 496 U.S. at 483 ("[W]here a phrase in a statute appears to have become a term of art, . . . any attempt to break down the term into its constituent words is not apt to illuminate its meaning."); see also United States v. Graham, 169 F.3d 787, 791-93 (3d Cir. 1999) (construing the statutory term "aggravated felony" as a "term of art" because, inter alia, the phrase includes misdemeanors in its definitional scope).[28]  The fact that Congress retained "good and sufficient cause" in § 1155 through two reenactments, when it clearly knew how to depart from the term's uniquely associated meaning, reinforces the conclusion that Congress understood "good and sufficient cause" as a term of art in the visa revocation context.

The majority contends that the legislative ratification rule does not apply to this case because there is no evidence in the legislative history that Congress "affirmatively sought to ratify the agency's interpretation of a statute."  But the "affirmative indication" in legislative history is not a doctrinal

---

[27] For references to "reasonable cause" in the INA, see 8 U.S.C. §§ 1182(a)(6)(B), 1182(m)(2)(E)(ii), 1182(n)(2)(A), 1182(n)(2)(G)(i), 1182(n)(2)(G)(vii), 1182(n)(5)(C), 1182(t)(3)(A).  For references to "good cause," see §§ 1182(a)(9)(B)(iv), 1182(l)(5); §§ 1186a(c)(2)(A)(ii), 1186a(d)(2)(B); §§ 1186b(c)(2)(A)(ii), 1186b(d)(2)(B); § 1254a(c)(3)(C); § 1522(e)(2)(A).  For a reference to "sufficient cause," see § 1448(c).

[28] For the same reason, contrary to the government's suggestion, it is the phrase "good and sufficient cause," not only the word "good" in that phrase, that supplies an objective legal standard in the visa revocation decision.

requirement. The Supreme Court has not explicitly held so in more than a century of articulating the legislative ratification canon. See United States v. Cerecedo Hermanos y Compania, 209 U.S. 337, 339 (1908) ("[T]he reenactment by Congress, without change, of a statute which had previously received long continued executive construction, is an adoption by Congress of such construction."); Lorillard, 433 U.S. at 580 (holding that the presumption of legislative ratification attaches where there is "an administrative or judicial interpretation of a statute," and Congress "re-enacts [that] statute without change"); Commodity Futures Trading Comm'n v. Schor, 478 U.S. 833, 846 (1986) ("It is well established that when Congress revisits a statute giving rise to a longstanding administrative interpretation without pertinent change, the 'congressional failure to revise or repeal the agency's interpretation is persuasive evidence that the interpretation is the one intended by Congress.'") (quoting NLRB v. Bell Aerospace Co., 416 U.S. 267, 274-75 (1974)).[29]

_____

[29] In characterizing "affirmative indication" as a doctrinal requirement, the majority relies on out-of-circuit cases in which courts refused to apply the rule of legislative ratification in the absence of affirmative indication in legislative history. See ACLU v. Clapper, 785 F.3d 787, 819 (2d Cir. 2015); Ass'n of Am. R.R.s v. Interstate Commerce Comm'n, 564 F.2d 486, 493 (D.C. Cir. 1977). These cases in turn rely on a handful of Supreme Court cases where the Court invoked some variation of the statement expressed in United States v. Bd. of Comm'rs of Sheffield, Al., 435 U.S. 110 (1978), that, "[w]hen a Congress that re-enacts a statute voices its approval of an administrative or other interpretation thereof, Congress is treated as having adopted that

Nor have we held that affirmative indication in legislative history is required for the legislative ratification canon to apply. The only case cited by the majority -- Molina, 981 F.2d at 23 -- does not suggest to the contrary. Our statement in Molina -- "Congressional reenactment of statutory language does not normally or automatically indicate a legislative intent to freeze all pre-existing agency interpretations of language," id. at 23 -- is inextricably tied to our reasoning that a court should be cautious about inferring legislative ratification where, as in that case, there is ambiguity in the agency's interpretations of the relevant statutes. See id. ("The case before us presents a particularly weak case for implying . . . Congressional intent" because "the application of the pre-existing INS rule . . . was

---

interpretation, and this Court is bound thereby." Id. at 134. The quoted language, however, does not logically yield the conclusion that affirmative indication of congressional intent in legislative history is doctrinally required. As one prominent scholar has observed, in Sheffield and other cases, the Court has used such affirmative indication as a reassurance mechanism where the Court chooses to apply the legislative ratification canon and as a strategy for avoiding the rule where the Court chooses not to. See generally William N. Eskridge, Jr., Interpreting Legislative Inaction, 87 Mich. L. Rev. 67, 79-83 (1988). The inconsistent reliance on affirmative indication and legislative history suggests that they are not preconditions to applying the legislative ratification doctrine. See id. at 81 (noting that the Court "often invokes the reenactment rule without a specific showing that Congress was aware of the judicial [or executive] interpretations"); Yule Kim, Cong. Research Serv., No. 97-589, Statutory Interpretation: General Principles and Recent Trends 46 (2008) (observing that "the presumption [of congressional awareness] comes into play in the absence of direct evidence that Congress actually considered the issue at hand.").

- 47 -

unclear."). Indeed, we held in Molina that, where the agency has inconsistently applied the statute, "Congressional silence does not show a Congressional intent to prevent subsequent [agency] clarification of [its interpretation]." Id. (emphasis added). We have no such inconsistent application of the relevant statute here.

To the extent that some "affirmative indication" from Congress is helpful in confirming that Congress in fact ratified the pre-existing agency interpretation of a statute, the circumstances of the two reenactments of § 1155 provide guidance. In Merrill Lynch, Pierce, Fenner & Smith v. Curran, the Court held that "the fact that a comprehensive reexamination and significant amendment of the [statute] left intact the statutory provisions [at issue] . . . is itself evidence that Congress affirmatively intended to preserve [the challenged interpretation]." 456 U.S. 353, 382 (1982) (emphasis added). We have such affirmative intent in this case. If Congress wanted to "specif[y]" the visa revocation decisions "to be in the discretion" of the Secretary, it could have done so in 1996, when it reenacted § 1155 with the passage of IIRIRA, or in 2004, when it reenacted § 1155 while removing other language from the same section. On either occasion, Congress could have, for instance, enumerated § 1155 in § 1252(a)(2)(B)(i) or eliminated the phrase "good and sufficient cause" from § 1155. Congress also could have added clearly discretionary language in § 1155 -- a familiar tool that Congress

- 48 -

used in other provisions of the INA.[30]  See, e.g., 8 U.S.C. § 1157(c)(1) (providing that the Attorney General "may, in [his] discretion . . . , admit any refugee . . . determined to be of special humanitarian concern to the United States"); § 1154(a)(1)(A)(viii) (providing that the bar on U.S. citizens convicted of certain offenses against a minor filing a family-based visa petition shall not apply, if the Secretary, "in [his] sole and unreviewable discretion," waives the bar).  But Congress did none of these things.  Instead, Congress did not include § 1155 in §§ 1252(a)(2)(B)(i) and kept the "good and sufficient cause" standard in § 1155 -- the only provision of the INA in which the phrase is used.[31]

---

[30] Given these structural and textual methods of precluding judicial review, I reject the notion, alluded to by the majority, that to interpret § 1155 as subject to judicial review would be to require congressional "talismanic incantation" of any particular word or phrase.

[31] The majority also suggests that the legislative ratification canon does not apply because there was no judicial consensus that a visa revocation decision is subject to review. My colleagues seem to imply that the lack of such judicial consensus matters, in turn, because it somehow vitiates the consistent agency application of "good and sufficient cause" as a basis for inferring congressional intent.  This argument confuses two separate grounds for positively interpreting congressional silence.  In the one case cited by the majority, judicial consensus was a factor in inferring congressional intent because the parties in that case disputed whether there were sufficiently consistent judicial constructions of a statute to sustain the presumption of congressional awareness; an agency interpretation of a statute was simply not at issue.  See Jama v. Immig. & Customs Enf't, 543 U.S. 335, 349-51 (2005).  Here, rather than contending that there was judicial consensus as to the reviewability of § 1155, I contend only that the agency to whom the enforcement of § 1155 was

## 2. Surrounding Statutory Language

Seemingly unperturbed by the dissonance between their construction of the statutory language and the agency's application of it, my colleagues ignore the "good and sufficient cause" standard because it is modified by "what he deems to be" in § 1155. To focus on "good and sufficient cause," according to the majority's reasoning, would fail to give effect to the preceding word "deems." My colleagues are not alone in this view. The Third Circuit has observed that "[t]he phrase 'for what [the Secretary] deems to be good and sufficient cause,' cannot be modified by judicial fiat to read the naked words, 'for good and sufficient cause.'" Jilin Pharm. USA, Inc. v. Chertoff, 447 F.3d 196, 204 (3d Cir. 2006) (alteration in original).

A failure to interpret "good and sufficient cause," however, would be just as much an act of "judicial fiat" as ignoring the arguably discretionary words in § 1155. More importantly, recognizing that "good and sufficient cause" prescribes objective legal criteria that govern the revocation decisions is not incompatible with an understanding that "may,"

---

entrusted had uniformly interpreted "good and sufficient cause" to prescribe objective legal criteria that guide the courts' review. I am not aware of case law -- nor has the majority cited any -- that says that judicial consensus on the statutory construction is categorically required for the legislative ratification canon to apply, or that the lack of such consensus obliterates the consistent agency interpretation that would otherwise support the assumption of congressional awareness.

"at any time," and "deems" reserve certain administrative discretion to the Secretary. As Kucana instructs, it does not suffice for statutory language to "contemplate[]" or "anticipate[]" an exercise of discretion. To overcome the presumption of judicial review, the language has to be explicit, unencumbered by any ambiguity over Congress's intent. 558 U.S. at 243 n.10; see also INS v. Doherty, 502 U.S. 314, 330 (1992) (Scalia, J., concurring in part, dissenting in part) ("Even discretion, however, has limits.").

The cumulative effect of "may," "at any time," "deems," and "good and sufficient cause" does not evince the level of clarity required to overcome that presumption. Of the three language choices relied on by the majority, the only one that qualifies the effect of "good and sufficient cause" is the word "deems." But "deems" in the combined phrase "what he deems to be good and sufficient cause" only allows the Secretary to determine whether factual grounds exist to satisfy the "good and sufficient cause" standard, i.e., to "warrant [] denial" of the visa petition, not what the standard should mean in each individual circumstance. See ANA Int'l, Inc. v. Way, 393 F.3d 886, 894 (9th Cir. 2004) (holding that the Secretary has discretion to decide "the specific factual ground upon which a particular visa is to be revoked, not "the general principles under which individual decisions to revoke a visa should be made").

The majority resorts to a sleight of hand in proposing a contrary interpretation. Without analyzing the interplay between the two phrases, the majority subsumes "good and sufficient cause" under "deems," and concludes that "deems" -- defined as "to sit in judgment upon" -- indicates that "what constitutes 'good and sufficient cause' is within the Secretary's discretion." See ANA Int'l, 393 F.3d at 899 (Tallman, J., dissenting) ("Not only does [the Secretary] decide whether [good and sufficient cause] exists, he decides what constitutes such cause in the first place."); Jilin Pharm., 447 F.3d at 204 (quoting the dissent in ANA Int'l). But the word "deems" cannot nullify the established meaning of "good and sufficient cause" that the relevant agency has applied for almost three decades, and that formed the backdrop against which Congress reenacted § 1155.

The primary case that the majority cites in support of this reading is inapposite. The majority argues that "deems" in § 1155, like "deem" in Webster v. Doe, 486 U.S. 592 (1988), "forecloses the application of any meaningful judicial standard of review." But the statutes at issue are not equivalent. In Webster, the relevant statutory provision, Section 102(c) of the National Security Act, provided that the Director of the Central Intelligence Agency "may, in his discretion, terminate the employment of any officer or employee of the Agency whenever he shall deem such termination necessary or advisable in the interests

- 52 -

of the United States." 486 U.S. at 594 (emphasis added). Hence, the statute in Webster "specified," or "state[d] explicitly," Kucana, 558 U.S. at 243 n.10, that the decision to terminate an employee of the agency is "in [the Director's] discretion." Indeed, while the use of the word "discretion" in a statute is not necessary to insulate the underlying decision from judicial review, the presence of it is sufficient.

Moreover, the judgment call contemplated in Webster -- determining what is "in the interests of the United States" -- requires on its face a policy-driven assessment that is categorically different from a determination of "good and sufficient cause." With the former, a qualitative comparison of individual circumstances produces, by necessity, a spectrum of outcomes -- e.g., an individual's continued employment is more or less "in the interests of the United States" according to different considerations in play. The latter inquiry, by contrast, is predicated on binary outcomes -- e.g., either Freitas has worked in a managerial or supervisory capacity for two years, or he has not.[32]

---

[32] A similar contrast can be drawn as to "good moral character" and "exceptional or extremely unusual hardship" -- two of the four statutory grounds for the Secretary's discretionary decision to cancel a removal order. See 8 U.S.C. § 1229b(b)(1)(B), (D). Neither phrase is amenable to objective definition. See Portillo-Rendon v. Holder, 662 F.3d 815, 817 (7th Cir. 2011); Romero-Torres, v. Ashcroft, 327 F.3d 887, 890 (9th Cir. 2003).

The Webster Court's reasoning further crystallizes this distinction. The Court observed that, "[s]hort of permitting cross-examination of the Director concerning his views of the Nation's security and whether the discharged employee was inimical to those interests, we see no basis on which a reviewing court could properly assess an Agency termination decision." 486 U.S. at 600. Here, there is no need to "cross-examin[e]" the Secretary. The revocation decision is based on objective evidence, such as a letter from an employer. The Third Circuit -- one of the early circuits to reject judicial review for visa revocation decisions -- made a similar misstatement, noting that to allow review would "require courts to test whether the Secretary genuinely deemed the proffered cause to be 'good and sufficient.'" Jilin Pharm., 447 F.3d at 204. Again, where the relevant documentation is shown, "good and sufficient cause" does not give the Secretary discretion to revoke his prior approval, regardless of how "genuine[]" his belief may be. In the end, it is the very rule of statutory construction cited by the majority -- "significance and effect shall, if possible, be accorded to every word," Wash. Mkt. Co. v. Hoffman, 101 U.S. 112, 115 (1879) -- that dictates a different interpretation of the interplay between "deems" and "good and sufficient cause."[33]

---

[33] The other case that the majority cites in support of its interpretation of "deems" -- Fed. Energy Admin. v. Algonquin SNG,

- 54 -

The other language choices that the majority invokes --
"may" and "at any time" -- do not suggest otherwise.  The Supreme
Court has noted in a landmark immigration case that, "while 'may'
suggests discretion, it does not necessarily suggest unlimited
discretion."  Zadvydas v. Davis, 533 U.S. 678, 697 (2001).[34]  Even
the majority acknowledges that the discretion-conferring meaning
of "may" "'is by no means invariable . . . and can be defeated by
indications of legislative intent to the contrary or by obvious
inferences from the structure and purpose of the statute.'"  United
States v. Rodgers, 461 U.S. 677, 706 (1983).  Here, the construct
of § 1155 makes clear that what the Secretary "may" do is
restricted by the "good and sufficient cause" standard.  Cf.
Kucana, 558 U.S. at 247 n.13 (explaining that Congress explicitly
carved out § 1158 as an exception to § 1152(a)(2)(B)(ii) because

---

Inc., 426 U.S. 548 (1976) -- is also distinguishable because what
the President may "deem[] necessary to adjust the imports of [an]
article and its derivatives" is not anchored in any objective legal
standard. Id. at 550 (quoting 19 U.S.C. § 1862(b) (1970)).

[34] The majority's attempt to distinguish Zadvydas is
unpersuasive.  To be sure, Zadvydas concerned the extent of the
Attorney General's authority to hold an alien who had been ordered
removed from the country following the 90-day statutory removal
period. 533 U.S. at 682. The factual circumstances of the case,
however, do not diminish the applicability of the reasoning that
"may" does not indicate "unlimited discretion." Id. at 697.  The
statement from Zadvydas quoted by the majority -- that the aliens
in that case "d[id] not seek review of the Attorney General's
exercise of discretion," id. at 688 -- is irrelevant.  Bernardo
does not "seek review of [the Secretary's] exercise of discretion";
rather, he challenges the district court's threshold determination
that the Secretary's revocation decision should be deemed
discretionary under the statute.

§ 1158 -- which governs the granting of asylum relief -- provides that the Attorney General "may grant asylum" without specifying any legal standard).[35]  Similarly, while "at any time" affords administrative flexibility to the Secretary in determining when to revoke the prior approval, it does not undermine the "good and sufficient cause" standard, nor does it frustrate the objective nature of evaluating whether the standard has been met.

Finally, in emphasizing "may," "at any time," and "deems," my colleagues place substantial weight on the fact that these constitute "three language choices," as opposed to, say, one or two.  But the numerical count of the discretionary words in § 1155 is a red herring. Because the presumption of judicial review applies, § 1155 need only reveal that the cumulative effect of the four language choices -- "good and sufficient cause" included -- is "reasonably susceptible to divergent interpretation," Gutierrez

---

[35] There is an additional reason why Congress may have carved out § 1158 from § 1252(a)(2)(B)(ii), apart from the use of the word "may" in § 1158.  Asylum is a form of "discretionary relief from deportation [or removal]."  INS v. Abudu, 485 U.S. 94, 106 (1988); see also Ticoalu v. Gonzales, 472 F.3d 8, 11 (1st Cir. 2006).  The granting of asylum has the effect of admitting an alien into the country or allowing the alien to stay -- decisions that have long been deemed "matter[s] of grace" and thus belonging to executive discretion.  Kucana, 558 U.S. at 247 (internal quotation marks omitted); see also INS v. St. Cyr, 533 U.S. 289, 308 (2001). Absent clear indication to the contrary, such as the one Congress implemented in § 1252(a)(2)(B)(ii), the nature of the relief in § 1158 -- reinforced by the word "may" -- would have suggested to courts that § 1158 is precluded from review.  For a discussion on how the visa revocation decision differs in character from such matters, see infra II.B.

de Martinez, 515 U.S. at 434. That is to say, while "good and sufficient cause" is but a single phrase, it is sufficient to sustain the presumption of judicial review, as long as it prescribes an objective legal standard that curtails the Secretary's discretion.

The availability of judicial review in an immigration statute has often depended on whether there is a meaningful legal standard that guides the administrative decision and the potential subsequent review by courts. Even for judgments that are enumerated in § 1252(a)(2)(B)(i) as not subject to judicial review, courts have reviewed an agency's predicate application of a statute where the application turns on a statutory term that has a defined, objective meaning. See, e.g., Montero-Martinez v. Ashcroft, 277 F.3d 1137, 1144 (9th Cir. 2002) (reviewing a discretionary denial of cancellation of removal under § 1229b, where the decision concerned an application of a defined statutory term, "child"). By contrast, where the statutory term that provides the basis for the agency's decision has no objective meaning, courts have construed the decision as purely discretionary and thus precluded from judicial review. See Portillo-Rendon v. Holder, 662 F.3d 815, 817 (7th Cir. 2011) (holding that a denial of cancellation of removal is not reviewable because "good moral character" -- the lack of which provided a basis for the denial -- is "not define[d]" in the statute); Romero-Torres v. Ashcroft, 327 F.3d 887, 890-91

(9th Cir. 2003) (finding that a denial of cancellation of removal based on the absence of "extreme hardship" is not subject to judicial review because "the language [of the phrase] itself commits the determination to the opinion of the Attorney General" (internal quotation mark omitted)).  Because "good and sufficient cause" prescribes a meaningful legal standard, unaltered by the surrounding words in § 1155, I conclude that the applicable presumption of review should control, and that judicial review should be available for visa revocation decisions.

## B.  Structure

The structure of § 1252(a)(2)(B) bolsters the conclusion that I draw from the text of the relevant statutes.[36]  In <u>Kucana</u>,

---

[36] The majority argues in two footnotes that this structural reasoning derived from <u>Kucana</u> is waived because Bernardo did not raise it until the oral argument.  As the Supreme Court has held, however, "'[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.'" <u>U.S. Nat'l Bank of Or.</u> v. <u>Indep. Ins. Agents of Am., Inc.</u>, 508 U.S. 439, 446 (1993) (quoting <u>Kamen</u> v. <u>Kemper Fin. Servs., Inc.</u>, 500 U.S. 90, 99 (1991) (alteration in original)).  Here, the central issue of whether judicial review is available under § 1155 -- which is what the structural argument based on <u>Kucana</u> addresses -- is properly before this Court, as the issue was briefed by the parties and decided by the district court.  Moreover, it is not as if either party was unaware of <u>Kucana</u>.  Both Bernardo and the government cited <u>Kucana</u> in their briefs before this Court, albeit to support different arguments.  The rule in our circuit cited by the majority -- that "issues adverted to in a perfunctory manner . . . are deemed waived," <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990) -- is not so broad as to engulf "legal theories" and thereby confine the Court to the universe of legal reasoning, however small, that parties in a case identify.

the Supreme Court noted that "[t]he proximity of clauses (i) and (ii) [in § 1252(a)(2)(B)], and the words linking them -- 'any other decision' -- suggest that Congress had in mind decisions of the same genre" in both clauses. 558 U.S. at 246-47. While the Kucana Court initially relied on the "proximity" comparison to emphasize that both clauses encompass only decisions "made discretionary by legislation," not by regulations, the Court immediately extended the comparison to the decisions enumerated as discretionary in § 1252(a)(2)(B)(i) and the decisions rendered discretionary by the text of § 1252(a)(2)(B)(ii). Thus, in determining what decisions may be precluded from judicial review under § 1252(a)(2)(B)(ii), the Court "found significant the character of the decisions Congress enumerated in § 1252(a)(2)(B)(i)." Id. at 247. Those decisions include "waivers of inadmissibility based on certain criminal offenses, § 1182(h), or based on fraud or misrepresentation, § 1182(i); cancellation of removal, § 1229b; permission for voluntary departure, § 1229c; and adjustment of status, § 1255." Id. at 248. They are, in other words, "substantive decisions . . . made by the Executive . . . as a matter of grace" -- decisions that "involve whether aliens can stay in the country or not." Id. at 247 (quoting the government's argument).

A decision to revoke the approval of a visa petition is not "of a like kind."[37]  Id. at 248.  Approval of a visa petition is only "a preliminary step in the visa or adjustment of status application process."  Matter of Ho, 19 I. & N. Dec. at 589. It means only that the beneficiary is eligible to apply for an immigrant visa (often through the adjustment of status process), not that she is entitled to one. Id.; see also Thomas Alexander Aleinkoff, et al., Immigration and Citizenship: Process and Policy 498-99 (7th ed. 2011); Firstland Int'l, Inc. v. INS, 377 F.3d 127, 132 n.6 (2d Cir. 2004) ("We note, however, that the INS's approval of an immigrant visa petition does not, by itself, entitle an alien to permanent resident status.  It appears that the Attorney General retains discretion to deny an application for adjustment of status even where the applicant has an approved immigrant visa petition." (citing 8 U.S.C. § 1255(a)); Tongatapu Woodcraft Haw., Ltd. v. Feldman, 736 F.2d 1305, 1308 (9th Cir. 1984) ("It is important to note that a visa petition is not the same thing as a visa. . . . It does not guarantee that a visa will be issued, nor does it grant the alien any right to remain in the United States.").  As the

_____

[37]  The majority attempts to limit Kucana's structural reasoning to the factual confines of the case, noting that "[t]he question of whether revocations of visa petition approvals are of a 'like kind' was not before the [Kucana] Court."  It is certainly true that the issue that we are addressing here was not before the Court in Kucana.  But Kucana announced principles of statutory interpretation with respect to the same statute as here, § 1252(a)(2)(B), which are unmistakably applicable to this case.

Kucana Court explained in characterizing the motion to reopen removal proceedings, where a court decision reversing an agency ruling "does not direct the Executive to afford the alien substantive relief," the underlying decision of the agency is an "adjunct ruling[]" subject to judicial review, not a "substantive decision[]" insulated from court oversight. 558 U.S. at 248, 247.

A decision to revoke the prior approval of a visa petition is precisely such an "adjunct ruling[]." Id. at 248. Just as in Kucana, a court decision reversing the revocation ruling "[would] not direct the Executive to afford the alien substantive relief," as the approval of a visa petition only determines the alien's eligibility for an immigrant visa, not her overall admissibility. Moreover, the revocation decision stands in stark contrast to the matters observed by the Kucana Court to be "specified" as discretionary under § 1252(a)(2)(B)(ii). Id. (citing § 1157(c)(a), which allows the Attorney General to admit refugees "determined to be of special humanitarian concern to the United States," and §§ 1181(b) and 1182(a)(3)(D)(iii), which give the Attorney General "discretion" to waive certain inadmissibility grounds).

A contrary interpretation would produce a broader statutory anomaly. It is widely accepted that the Secretary's denial of visa petitions under § 1154 is subject to judicial review. See Soltane v. U.S. Dep't of Justice, 381 F.3d 143, 147-

48 (3d Cir. 2004) (holding that a denial of an employment-based visa petition is subject to court oversight despite § 1252(a)(2)(B)(ii) because § 1153(b)(4) states that "special immigrant" employment-based visas "shall be made available" upon satisfaction of certain conditions); Spencer Enters., Inc. v. United States, 345 F.3d 683, 689 (9th Cir. 2003) (holding that a denial of an employment-based visa petition is subject to judicial review because § 1154(b) states that the Attorney General "shall" approve the petition if the eligibility requirements are met); Z-Noorani, Inc. v. Richardson, 950 F. Supp. 2d 1330, 1337-1343 (N.D. Ga. 2013) (reviewing a denial of an employment-based visa petition); see also Bangura v. Hansen, 434 F.3d 487, 498 (6th Cir. 2006) (presuming that denials of spousal visa petitions are reviewable in court under the Administrative Procedure Act); Zemeka, 989 F. Supp. 2d at 128-32 (reviewing a denial of a visa petition based on marriage fraud).

Thus, to hold that revocation decisions are not reviewable in court would result in an incoherent understanding of the INA, in which judicial recourse is available if the petition is denied but not available if the petition is revoked, even where both the denial and revocation are based on the same factual ground, such as a failure to satisfy the minimum prior work

experience.[38]  "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."  Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 575 (1982) (citing United States v. Am. Trucking Ass'ns, Inc., 310 U.S. 534, 542-43 (1940)).  Construing visa revocation decisions as subject to judicial review would treat revocations and denials alike where the same facts are involved and, hence, preserve the coherence of the INA.

## III.

In rejecting the majority's view, I recognize the split in authority among the eight circuits that have ruled on this issue so far.  Seven of those circuits have held that a visa revocation decision under § 1155 is insulated from judicial review.  See Mehanna v. U.S. Citizenship and Immigration Servs., 677 F.3d 312,

---

[38] The majority insists that this structural anomaly helps their argument because the statutes authorizing denials of visa petitions use the word "shall," not "may," and because Congress has to "structure and allocate resources of our immigration system."  As to the first point, I reiterate that, while Congress used the word "may" in § 1155, it also curtailed the effect of "may" by imposing objective legal criteria under the "good and sufficient standard.  Moreover, while I recognize the need to allocate resources, the majority is inferring here a statutory scheme where Congress chose to allow a judicial remedy for one decision and not the other, even in cases where both decisions are based on the same lack of minimum prior work experience.  I would not conclude that Congress intended such an arbitrary allocation of resources, absent clear textual or structural indications in the statutes.

313 (6th Cir. 2012); Green v. Napolitano, 627 F.3d 1341, 1345-46 (10th Cir. 2010); Abdelwahab v. Frazier, 578 F.3d 817, 821 (8th Cir. 2009); Sands v. U.S. Dep't of Homeland Sec., 308 F. App'x 418, 419-20 (11th Cir. 2009) (per curiam); Ghanem v. Upchurch, 481 F.3d 222, 224 (5th Cir. 2007); Jilin Pharm., 447 F.3d at 204; El-Khader v. Monica, 366 F.3d 562, 567 (7th Cir. 2004). Only the Ninth Circuit has held that a revocation decision is reviewable in court based on the "good and sufficient cause" standard in § 1155. See ANA Int'l., 393 F.3d at 895.

The seven circuit decisions, however, seem to reflect what scholars have referred to as a "precedential cascade."[39] The Seventh Circuit was the first to hold that visa revocation decisions are discretionary and thus not reviewable in court. See El-Khader, 366 F.3d at 567. Shortly thereafter, the Ninth Circuit created a split, holding that visa revocation decisions are subject to judicial review. See ANA Int'l, 393 F.3d at 895. The Third Circuit then agreed with the Seventh Circuit and further developed the reasoning for precluding judicial review, focusing on the "may," "any time," and "deems" language in § 1155. See Jilin

---

[39] See Eric Talley, Precedential Cascades: An Appraisal, 73 S. Cal. L. Rev. 87 (1999) (exploring "a cascade theory of [judicial] precedent"); Timur Kuran & Cass R. Sunstein, Availability Cascades and Risk Regulations, 51 Stan. L. Rev. 683, 765 (1999) (observing that courts are not immune to informational, cognitive and reputational herding effects, which the authors term "availability cascades").

Pharm., 447 F.3d at 203-205. In the years that followed, the remaining five circuits sided with the Third and the Seventh Circuits, many of them without much independent analysis. See Ghanem, 481 F.3d at 223-224; Abdelwahab, 578 F.3d at 821; Sands, 308 F. App'x. at 419-20; Green, 627 F.3d at 1343-46; Mehanna, 677 F.3d at 314-17. Hence, while the numerical split among the circuits is far from even, I do not accord much weight to the precedential imbalance.

There is, moreover, another reason to question this particular "precedential cascade." Five of the seven circuit decisions predated Kucana.[40] Kucana, in my view, has inescapably changed the analytical landscape governing the application of the presumption of judicial review to the interplay between §§ 1155 and 1252(a)(2)(B) of the INA. Indeed, with the benefit of Kucana's guidance, I think it apparent that my colleagues and the courts whose view they adopt have erroneously interpreted that interplay.

I respectfully dissent.

---

[40] Of the two circuit decisions that were decided after Kucana, one misstated the nature of the visa revocation decision, noting that "Section 1155, which allows the Secretary to revoke his previous approval of a visa petition and thus conclusively determines whether an alien can stay in the country or not, fits squarely within the class of 'substantive decisions' described in Kucana as warranting insulation from judicial review." Mehanna, 677 F.3d at 317 (quoting Kucana, 558 U.S. at 247). This statement mischaracterizes the visa revocation decision. The approval of a visa petition determines only the eligibility to apply for an immigrant visa, not "whether an alien can stay in the country or not."