RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 12a0105p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

NOURELAIN MEHANNA; REDA BARAKAT,
              *Plaintiffs-Appellants,*

         *v.*

UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES, DETROIT DISTRICT
OFFICE, DISTRICT DIRECTOR; FIELD OFFICER
SUPERVISOR FOR ADJUDICATIONS;
SUPERVISOR OF ADJUDICATIONS; DISTRICT
ADJUDICATIONS OFFICER,
              *Defendants-Appellees.*

No. 11-1110

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:09-cv-14510—Victoria A. Roberts, District Judge.

Decided and Filed: April 19, 2012

Before: MARTIN, SUTTON, and KETHLEDGE, Circuit Judges.

_____

## COUNSEL

_____

**ON BRIEF:** Robert M. Birach, LAW OFFICE OF ROBERT M. BIRACH, P.C., Detroit, Michigan, Michael R. Dezsi, LAW OFFICE OF MICHAEL R. DEZSI, PLLC, Detroit, Michigan, for Appellants. Derri T. Thomas, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellees.

_____

## OPINION

_____

BOYCE F. MARTIN, JR., Circuit Judge. The sole issue on appeal in this case is whether this Court has jurisdiction to review a decision of the Secretary of Homeland Security, made pursuant to 8 U.S.C. § 1155, to revoke a visa petition. If the Secretary's decision to revoke a visa petition is discretionary, this Court lacks jurisdiction to review

the decision pursuant to 8 U.S.C. § 1252(a)(2)(B)(ii). We hold that the Secretary's decision to revoke a visa petition authorized by section 1155 is discretionary, and we affirm the district court's dismissal of this case for lack of jurisdiction.

I.

In April 2000, Nourelain Mehanna, a citizen of Lebanon and a lawful permanent resident of the United States, filed a Form I-130 relative visa petition on behalf of her son, Reda Barakat. Mehanna sought to classify Barakat as an unmarried, adult child of a permanent resident, a preference category under 8 U.S.C. § 1153(a)(2). United States Citizenship and Immigration Services approved the petition in November 2001.

On December 25, 2006, Barakat married a United States citizen. As a result of the marriage, Barakat was admitted to the United States as a conditional permanent resident on August 9, 2007. On June 12, 2008, Barakat's marriage was annulled.

On March 19, 2009, the Detroit office of United States Citizenship and Immigration Services notified Barakat that it intended to terminate his conditional permanent resident status because his marriage had been annulled within two years of when he obtained the status. Barakat responded to the notice, admitted that his marriage was annulled, and, through counsel, advised United States Citizenship and Immigration Services that he had separately applied to adjust his status based on the approved visa petition Mehanna had previously filed on his behalf.

On April 22, United States Citizenship and Immigration Services notified the Director of the National Visa Center and Mehanna that the visa petition classifying Barakat as an unmarried, adult child of a lawful permanent resident, which was approved in November 2001, had been automatically revoked on the date of Barakat's marriage to a United States citizen pursuant to 8 C.F.R. § 205.1(a)(3)(i)(I).

On April 30, United States Citizenship and Immigration Services issued Barakat a notice that his status as a conditional permanent resident had been terminated because of the annulment of his marriage. On August 13, United States Citizenship and

Immigration Services denied Barakat's application for adjustment of his status as an unmarried, adult child of a permanent resident. On the same date, the Department of Homeland Security served a Notice to Appear on Barakat, thus initiating removal proceedings against him.

Barakat and Mehanna filed this suit before the district court seeking a declaration that Barakat's I-130 visa petition is valid in spite of the annulment of his marriage because, under Michigan law, an annulment voids a marriage *ab initio* and so United States Citizenship and Immigration Services should treat him as though he were never married. The district court determined that the decision of the Secretary of Homeland Security to revoke a visa petition is discretionary and therefore not subject to judicial review pursuant to section 1252(a)(2)(B)(ii). Based on this conclusion, the district court dismissed Barakat and Mehanna's complaint for lack of jurisdiction. Barakat and Mehanna appeal the judgment of the district court.

## II.

"We review a district court's findings as to whether it had subject matter jurisdiction de novo." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011). Congress made section 1252(a)(2)(B)(ii)—the jurisdiction-stripping provision at issue here—a part of the Immigration and Nationality Act, 66 Stat. 166, 8 U.S.C. § 1101 *et seq.*, through the Illegal Immigration Reform and Immigration Responsibility Act of 1996, 110 Stat. 3009-546. With the enactment of section 1252(a)(2)(B)(ii), Congress removed from our jurisdiction "any . . . decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." Section 1252(a) governs 8 U.S.C. §§ 1151-1381 and includes the statute that authorized the Secretary of Homeland Security to revoke Barakat's visa petition, section 1155.

We must determine whether section 1252(a)(2)(B)(ii) removed our jurisdiction to review the Secretary's decision under section 1155 to revoke a visa petition. *See, e.g.*, *Berhane v. Holder*, 606 F.3d 819, 821 (6th Cir. 2010); *Valenzuela-Alcantar v. INS*, 309 F. 3d 946, 949 (6th Cir. 2002). Section 1155 provides that: "The Secretary of Homeland Security may, at any time, for what he deems to be good and sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." We must determine whether this language means that the Secretary's decision to revoke a visa petition is an act of "discretion." If the answer is yes, we do not have authority to review the decision. *Berhane*, 606 F.3d at 821 (assessing the impact of section 1252(a)(2)(B)(ii) on our jurisdiction to review the Attorney General's decision that an alien is ineligible for asylum because he "committed a serious nonpolitical crime").

This question is an issue of first impression in the Sixth Circuit, but at least seven other circuits have decided the issue. All but one of our sister circuits that have confronted this question have interpreted revocations of visa petitions under section 1155 to be discretionary. *See Green v. Napolitano*, 627 F.3d 1341, 1344-46 (10th Cir. 2010); *Abdelwahab v. Frazier*, 578 F.3d 817, 821 (8th Cir. 2009); *Sands v. U.S. Dep't of Homeland Sec.*, 308 F. App'x 418, 419-20 (11th Cir. Jan. 26, 2009); *Ghanem v. Upchurch*, 481 F.3d 222, 223-24 (5th Cir. 2007); *Jilin Pharm. USA, Inc. v. Chertoff*, 447 F.3d 196, 201-05 (3d Cir. 2006); *El-Khader v. Monica*, 366 F.3d 562, 566 (7th Cir. 2004); *but see ANA Int'l Inc. v. Way*, 393 F.3d 886, 889 (9th Cir. 2004). We now join the majority of our sister circuits and hold that the Secretary's decision to revoke a visa petition under section 1155 is an act of discretion that Congress has removed from our review.

The plain language of section 1155 reveals that the Secretary has discretion over visa petition revocation. First, section 1155 provides that the Secretary "may" revoke a visa petition. "'[M]ay' suggests discretion." *Zadvydas v. Davis*, 533 U.S. 678, 697 (2001); *see also Kucana v. Holder*, 130 S. Ct. 827, 836 n.13 (2010) (noting that "[a]bsent [an explicit statement of exception in the Act], asylum applicants might fall within § 1252(a)(2)(B)(ii)'s jurisdictional bar because a statutory provision . . . specifies that

'the Attorney General *may* grant asylum.'"). Second, section 1155 provides that the Secretary may revoke a visa petition "at any time," a phrase that also suggests discretion. *See Ghanem*, 481 F.3d at 224 (finding that revocation "at any time" "also connotes discretion"); *Jilin*, 447 F.3d at 203 (finding that the phrase "at any time" "connotes a level of discretion" and noting that the discretion to revoke "at any time" was once limited by a notice requirement the elimination of which indicates Congress's "intent to strengthen the discretion of the Secretary . . . to revoke approval of [visa] petitions"); *El-Khader*, 366 F.3d at 567 (finding that the combination of "may" and "at any time" "plainly signifies a discretionary decision"). Third, section 1155 allows revocation "for what [the Secretary] deems to be good and sufficient cause." "Deem" means "to form or have an opinion; judge; think." Random House Dictionary of the English Language 521 (1987). Thus, the statute leaves it to the Secretary's opinion, judgment, or thought, whether there exists "good and sufficient cause" to revoke a petition. With this language, Congress committed the decision of whether to revoke a visa petition to the discretion of the Secretary. *See Ghanem*, 481 F.3d at 225 ("We interpret the phrase 'for what he deems' as vesting complete discretion in the Secretary to determine what constitutes good and sufficient cause."); *see also Valenzuela-Alcantar*, 309 F.3d at 949 (holding that "the language of [a statute since repealed] expressly commits the 'extreme hardship' determination to 'the opinion of the Attorney General'" and thereby empowers the Attorney General to make discretionary decisions about what constitutes extreme hardship).

The Ninth Circuit—the sole circuit court to find that section 1155 does not confer jurisdiction-stripping discretion to the Secretary—determined that under section 1155, "the right or power to [revoke a visa petition] is *not entirely* within the Attorney General's judgment or conscience" because the "good and sufficient cause" language "constitutes a legal standard the meaning of which we retain jurisdiction to clarify." *ANA Int'l*, 393 F.3d at 893-94. This reading, however, requires focusing on the "good and sufficient cause" language to the exclusion of the word "deems." "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded

to every word." *United States v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004) (quoting *Washington Market Co. v. Hoffman*, 101 U.S. 112, 115-16 (1879)). We interpret the word "deem" in this statute to give the Secretary discretion "to determine what constitutes good and sufficient cause." *Ghanem*, 481 F.3d at 225; *see also Jilin*, 447 F.3d at 204 ("To remove . . . 'for what [the Secretary] deems to be' is to commit what logicians describe as the fallacy of vicious abstraction." (alteration in original)). The statute, when read in its totality, plainly commits the decision of whether to revoke a visa petition to the discretion of the Secretary.

Mehanna and Barakat argue that *Kucana* and *Berhane* compel a finding that we have jurisdiction in this case. In *Kucana*, the Supreme Court held that by enacting section 1252(a)(2)(B), "Congress barred court review of discretionary decisions only when Congress itself set out the Attorney General's discretionary authority in the statute," 130 S. Ct. at 837, and not when "the Attorney General himself through regulation" made a decision discretionary. *Id.* at 831. Mehanna and Barakat point to a footnote in the *Kucana* decision, cited in *Berhane*, which notes that section 1252(a)(2)(B)(ii) "speaks of authority 'specified'—not merely assumed or contemplated—to be in the Attorney General's discretion." *Id.* at 834 n.10. "'[S]pecify' means 'to name or state explicitly or in detail.'" *Id.* (quoting Webster's New Collegiate Dictionary 1116 (1974)). In assessing whether the Attorney General's denial of a motion to reopen—made pursuant to 8 U.S.C. § 1229a(c)(7)(B)—is a discretionary decision, the Supreme Court noted "that the use of marginally ambiguous statutory language, without more," is insufficient to "specify that a particular action is within the Attorney General's discretion for the purposes of § 1252(a)(2)(B)(ii)." *Id.* (quoting *Soltane v. U.S. Dep't of Justice*, 381 F.3d 143, 147 (3d Cir. 2004) (alteration and internal quotation marks omitted)). Section 1229a(c)(7)(B) provides that "[t]he motion to reopen shall state the new facts that will be proven at a hearing to be held *if the motion is granted*." (emphasis added). This language, characterized as "marginally ambiguous" by the Supreme Court, is readily distinguishable from the language found in section 1155, which places the decision to revoke a visa petition unequivocally in the discretion

of the Secretary.  Though section 1155 does not use the word "discretion" itself, it can hardly be described as "marginally ambiguous."  Indeed, section 1155 "does not merely imply or anticipate that the Secretary has discretion to revoke" a visa petition, but explicitly "authorizes revocation for what the Secretary 'deems to be good and sufficient cause.'"  *Green*, 627 F.3d at 1346.

In *Berhane*, we assessed 8 U.S.C. §§ 1158(b)(2)(A) and 1231(b)(3)(B), which are readily distinguishable from section 1155.  Section 1158(b)(2)(A) provides that an alien is ineligible for asylum if "the Attorney General *determines* that . . . there are serious reasons for believing that," prior to his entry to the United States, "the alien . . . committed a serious nonpolitical crime."  (emphasis added).  Section 1231(b)(3)(B) provides that an alien will also be ineligible for relief if the "Attorney General *decides*" he committed a serious nonpolitical crime.  (emphasis added).  We rejected the notion that "empowering the Attorney General to 'determine[]' (or for that matter 'decide[]') something" sufficiently specifies discretion.  *Berhane*, 606 F.3d at 822.  Section 1155 does not merely allow the Secretary to "decide" or "determine" if a standard is met but instead, as we have explained, allows the Secretary to determine both when to revoke a visa petition and whether, in his opinion, "good or sufficient cause" to revoke a visa petition exists.  *Berhane* provides useful guidance in how to interpret statutes that fall within the subchapters covered by Section 1252(a)(2)(B)(ii), but it does not dictate the result here.

We also note that the substance of the decision that the Secretary is called upon to make pursuant to section 1155—whether to revoke a visa petition—supports our interpretation of section 1155.  In *Kucana*, the Supreme Court noted the significance of "the character of the decisions Congress enumerated in § 1252(a)(2)(B)(i), thereby insulating them from judicial review."  130 S. Ct. at 837.  These decisions waive inadmissibility based on certain criminal offenses, or based on fraud or misrepresentation; cancel removal; permit voluntary departure; and adjust status.  *Id.* The Supreme Court identified those enumerated decisions as "substantive decisions . . . made by the Executive in the immigration context as a matter of grace, things that

involve whether aliens can stay in the country or not," and contrasted them with those decisions that are more accurately described as adjunct or procedural. *Id.* (alteration in original) (internal quotation marks omitted). Section 1155, which allows the Secretary to revoke his previous approval of a visa petition and thus conclusively determines whether an alien can stay in the country or not, fits squarely within the class of "substantive decisions" described in *Kucana* as warranting insulation from judicial review.

In interpreting section 1155, we are mindful of the "strong presumption in favor of judicial review of administrative action." *INS v. St. Cyr*, 533 U.S. 289, 298 (2001). Indeed, we have noted that the Supreme Court in *Kucana* "admonishes the courts to read the Act's jurisdiction-stripping provisions narrowly—in 'accord[] with [the] traditional understanding . . . that executive determinations generally are subject to judicial review.'" *Berhane*, 606 F.3d at 822 (alterations in original) (citing *Kucana*, 130 S. Ct. at 839). Nonetheless, we find that the language of the statute provides the "clear and convincing evidence" required to "dislodge the presumption" of judicial review in this case. *Kucana*, 130 S.Ct. at 839 (quoting *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)) (internal quotation marks omitted).

## III.

For the preceding reasons, we AFFIRM the judgment of the district court.