RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 16a0143p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

───────────────

MEHRDAD HOSSEINI,

                    *Plaintiff-Appellant,*

      *v.*

JEH JOHNSON, Secretary of the U.S. Department of
Homeland Security, et al.,

                    *Defendants-Appellees.*

No. 15-6082

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:14-cv-00404—Karen K. Caldwell, Chief District Judge..

Decided and Filed:  June 17, 2016

Before:  KEITH, COOK, and STRANCH, Circuit Judges.

───────────────

**COUNSEL**

───────────────

**ON BRIEF:**  Lance Curtright, DE MOTT, MCCHESNEY, CURTRIGHT, ARMENDARIZ, LLP, San Antonio, Texas, for Appellant.  J. Max Weintraub, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellees.

───────────────

**OPINION**

───────────────

     DAMON J. KEITH, Circuit Judge.  Appellant Mehrdad Hosseini ("Hosseini") appeals the district court's dismissal of his complaint for failure to state a claim.  Hosseini sought review of the United States Citizenship and Immigration Service's ("USCIS's") denial of his application to adjust his status from that of an asylee to that of a permanent resident.  Defendants Rand

Beers[1] and others, moved to dismiss the complaint for lack of subject-matter jurisdiction and, alternatively, to dismiss the complaint for failure to state a claim.  The district court held that it had subject-matter jurisdiction over Hosseini's claim pursuant to the federal question statute, 28 U.S.C. § 1331.  The district court dismissed the complaint for failure to state a claim, concluding that the denial of Hosseini's application was not a "final agency action" within the meaning of the Administrative Procedure Act ("APA").  Because we hold that the denial of Hosseini's application was a final agency action, we **REVERSE**.

## I.  BACKGROUND

In 1999, Hosseini's wife was granted asylum, and she filed a petition seeking asylum for Hosseini as her spouse.  USCIS approved the petition, and Hosseini lawfully entered the United States as a derivative asylee in February 2000.  Approximately one year later, Hosseini filed a Form I-485 Application to Register Permanent Residence or Adjust Status, seeking to obtain permanent resident status.  He sought the adjustment pursuant to 8 U.S.C. § 1159.  However, no action was taken on Hosseini's application for nearly twelve years.  In March 2013, Hosseini filed a pro se complaint in federal district court seeking to compel the USCIS to act on his application.  On April 3, 2014, the district court ordered the USCIS to adjudicate Hosseini's application within 60 days.

Thereafter, the USCIS sent Hosseini a Notice of Intent to Deny his application due to the agency's determination that he was inadmissible for having engaged in terrorist activities as defined by 8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).[2]  Hosseini responded to the Notice, asserting that he was not, and had never been, a member of a terrorist organization.  However, Hosseini stated on his application to adjust status:  "I joint [sic] to a political organization called Fedaeian

---

[1]During the district court proceedings, the Secretary of Homeland Security was Rand Beers.  *See* Appellee Br. at n.1.  Jeh Johnson is the current Secretary of Homeland Security, and the parties agreed to substitute him as the proper defendant on appeal.  *See id.*

[2]This provision states:

> [T]he term "engage in terrorist activity" means . . . (VI) to commit an act that the actor knows, or reasonably should know, affords material support . . . (dd) to a terrorist organization . . . or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization.

8 U.S.C. § 1182(a)(3)(B)(iv)(VI)(dd).

Khalgh [sic] from 1979 to 1982 in Iran." Hosseini also stated that he had distributed literature for Fadayeen Khalq ("FeK") and Mujahedin-e Khalq ("MeK") until sometime in 1985. He provided copying and telefax services to facilitate the distribution of Mek political leaflets and articles. The USCIS denied his application on July 18, 2014, after determining that Hosseini had engaged in activities for Fek and MeK during a time when both groups fell within the definition of an undesignated terrorist organization under 8 U.S.C. § 1182(a)(3)(B)(vi)(III). The USCIS concluded that Hosseini, therefore, was "inadmissible." Accordingly, he did not meet the eligibility requirements for adjustment of status—one of which is to be "admissible." Despite this inadmissibility determination, Hosseini's asylum status was not revoked, and no removal proceedings were instituted.

On October 28, 2014, Hosseini, acting pro se, filed another complaint in federal district court—this time—challenging the USCIS's decision pursuant to the Administrative Procedure Act ("APA")[3] and the Declaratory Judgment Act.[4] This second complaint is the subject of the current appeal. Hosseini argued that the USCIS's conclusion that he is "inadmissible" was erroneous, arbitrary, and capricious. In support, he stated that he could not be "inadmissible" because he was admitted as a derivative asylee in 2000. He asserted, among other things, that the USCIS erroneously considered his "minimal occasional non-violence [sic] indirect activities of providing literatures" as "engaging in terrorist activities."

Defendants moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), and, alternatively, for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendants argued that the APA and 8 U.S.C. § 1252(a)(2)(B)(ii) preclude judicial review of the USCIS's denial of Hosseini's application for adjustment of status because the decision was discretionary. Defendants also argued that, notwithstanding the jurisdictional bar, Hosseini's claim lacked merit. The district court rejected Defendants' jurisdictional arguments, determining that it had subject-matter jurisdiction over Hosseini's claim pursuant to 28 U.S.C. § 1331 federal-question jurisdiction. The district court then dismissed the complaint for failure to state a claim, holding that the

---

[3]5 U.S.C. § 701, *et seq.*

[4]28 U.S.C. § 2201.

USCIS's denial of Hosseini's adjustment of status application was not a "final agency action" under the APA. Hosseini, now appearing through counsel, timely appealed.

## II. DISCUSSION

### A. Subject-Matter Jurisdiction

#### (i) Standard of Review

"We review a district court's findings as to whether it had subject matter jurisdiction de novo." *Mehanna v. U.S. Citizenship and Immigration Servs.*, 677 F.3d 312, 314 (6th Cir. 2012) (citing *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 491 (6th Cir. 2011)).

#### (ii) Analysis

The district court determined that it had jurisdiction over Hosseini's APA claim pursuant to federal-question jurisdiction, relying on our opinion in *Jama v. Dep't of Homeland Sec.*, 760 F.3d 490 (6th Cir. 2014). In *Jama*, we noted that although the APA is not itself a jurisdiction-conferring statute, our jurisdiction over APA claims derives from the general federal-question statute, 28 U.S.C. § 1331. 760 F.3d at 494. However, the APA does not apply where "statutes preclude judicial review" or where "agency action is committed to agency discretion by law." *Id.* at 495; *accord* 5 U.S.C. § 701(a). Accordingly, we must determine whether a statute precludes judicial review of Hosseini's claim or if the agency decision he challenges is committed to agency discretion by law. *See Jean v. Gonzales*, 435 F.3d 475, 480 (4th Cir. 2006) (concluding that "it is critical for us to determine whether . . . the petition seeks review of a discretionary determination").

Defendants argued before the district court that subject-matter jurisdiction was lacking because a statute precludes review of Hosseini's claims and because the denial of a status-adjustment application is committed to agency discretion by law. The district court rejected this argument. While Defendants did not challenge the district court's jurisdiction determination in a cross-appeal, we must be independently satisfied that subject-matter jurisdiction is met before adjudicating a case on the merits. *Siding and Insulation Co., Inc. v Acuity Mut. Ins. Co.*, 754 F.3d 367, 368–69 (6th Cir. 2014) (noting that "[s]ubject-matter [jurisdiction] delineations

must be policed by the courts on their own initiative") (second alteration in original) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999)).

At the outset, some types of agency determinations are entirely precluded from judicial review by statute. *See, e.g.*, 8 U.S.C. 1252(a)(2)(B)(i)–(ii). For example, 8 U.S.C. § 1252(a)(2)(B) states in relevant part:

> Notwithstanding any other provision of law (statutory or nonstatutory) . . . and regardless of whether the judgment, decision or action is made in removal proceedings, no court shall have jurisdiction to review-- (i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or (ii) any [] decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter[5] to be *in the discretion of the Attorney General or the Secretary of Homeland Security . . . .*

8 U.S.C. § 1252(a)(2)(B) (emphasis added).

In the present case, Hosseini sought an adjustment of status under 8 U.S.C. § 1159. Section 1159 specifies that the Secretary of Homeland Security or the Attorney General in their "*discretion . . .* may adjust" the status of an alien granted asylum to the status of a permanent resident, but only if certain prerequisites for eligibility are met. *See* 8 U.S.C. § 1159 (emphasis added). Because the ultimate decision of whether to adjust status is committed to the agency's discretion, "section 1252(a)(2)(B) appears, [at first blush], to create an unqualified bar to judicial review" of all things related to the denial of adjustment of status, but it does not. *See Jean*, 435 F.3d at 480; *Billeke-Tolosa v. Ashcroft*, 385 F.3d 708, 711 (6th Cir. 2004). Courts may review "non-discretionary decisions that underlie determinations that are ultimately discretionary." *Billeke-Tolosa*, 385 F.3d at 711 (citing *Valenzuela-Alcantar v. INS*, 309 F.3d 946, 949 (6th Cir. 2002)). Satisfaction of the eligibility "requirements is a condition precedent to any exercise of [] discretion." *See Sagastume v. Holder*, 490 F. App'x 712, 715 (6th Cir. 2012) (citing *Billeke-Tolosa*, 385 F.3d at 711). So eligibility determinations underlying the agency's decision are non-discretionary determinations that are subject to judicial review. *See id.*; *see also Lepe-Paz v. Holder*, 531 F. App'x 645, 646 (6th Cir. 2013); *Mejia Rodriguez v. U.S. Dep't of*

---

[5]"[T]his subchapter" refers to 8 U.S.C. §§ 1151–1381. *Kucana v. Holder*, 558 U.S. 233, 239 n.3 (2010); *see also Mehanna*, 677 F.3d at 314. The provision at issue here, 8 U.S.C. § 1159, falls within this subchapter.

*Homeland Sec.*, 562 F.3d 1137, 1144 (11th Cir. 2009); *Addo v. Mukasey*, 267 F. App'x 442, 447 (6th Cir. 2008); *Jean*, 435 F.3d at 480 (observing that many courts had held that "non-discretionary legal determinations regarding an [applicant's] *eligibility* for such relief f[a]ll outside of the jurisdiction stripping language of section 1252(a)(2)(b)" (emphasis added) (internal quotation marks omitted)).[6]

Hosseini alleges that that USCIS's ineligibility finding was "erroneous." While he admits to having been involved with FeK and Mek by, among other things, distributing flyers and literature for the organizations, he argues that he never engaged in terrorist activities and did not provide "material" to the organizations. Hosseini argues that his distribution of flyers constituted free speech. Whether Hosseini's conduct amounted to engagement in terrorist activities is not a matter of discretion; it is a matter determined by statute. *See* 8 U.S.C. § 1182 (a)(3)(B)(iv) ("'Engage in terrorist activity' defined"). Accordingly, we have subject-matter jurisdiction over Hosseini's challenge to the USCIS's ineligibility determination. *See, e.g., Lepe-Paz*, 531 F. App'x at 646; *see also Jama*, 760 F.3d at 494.

---

[6]The notion that courts can review non-discretionary decisions in this context has been viewed as an "implied exception" to § 1252's judicial review bar. *See Reyes v. Holder*, 410 F. App'x 935, 939 n.7 (6th Cir. 2011) (citing *Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010)). With the enactment of the REAL ID Act in 2005, Congress amended § 1252 to contain an "explicit exception to the jurisdictional bar." *See id.* That explicit exception states: "Nothing in [§ 1252(a)(2)(B)] . . . which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate *court of appeals* . . . ." 8 U.S.C. § 1252(a)(2)(D) (emphasis added). Some litigants have argued that the explicit exception strips the district courts of jurisdiction over even nondiscretionary claims, citing the emphasized language above regarding the court of appeals. *Mejia Rodriguez v. U.S. Dep't of Homeland Sec.*, 562 F.3d 1137, 1145 n.15 (11th Cir. 2009). We left the door to this question open in *Reyes*. *See* 410 F. App'x at 939 n.7 ("After the adoption of the REAL ID Act of 2005 and the inclusion of § 1252(a)(2)(D), the propriety of this implied exception is unclear."). However, *Jama* effectively closed that door when it concluded, albeit with little analysis, that district courts retain jurisdiction over non-discretionary claims through the federal question statute. *See Jama*, 760 F.3d at 494. We are bound by *Jama*, but we nonetheless find its conclusion on this point to be sound. After all, if Congress had intended to limit district court jurisdiction over non-discretionary determinations, it could have done so with unambiguous language to that effect in § 1252(a)(2)(D). *See Lindahl v. OPM*, 470 U.S. 768, 779–80 (1985) ("[W]hen Congress intends to bar judicial review altogether, it typically employs language far more unambiguous and comprehensive."). It did not. *See generally* 8 U.S.C. § 1252. A more compelling reading of the explicit exception is that it "does not withdraw district court jurisdiction that derives from other sources," but rather it merely "clarifies that review of legal and constitutional questions are possible on a petition for review." *Mejia Rodriguez*, 562 F.3d at 1145 n.15.

**B. The Merits of the APA Claim**

**(i) Standard of Review**

We review the district court's dismissal of a complaint for failure to state a claim de novo. *See Lambert v. Hartman*, 517 F.3d 433, 438–39 (6th Cir. 2008).

**(ii) Analysis**

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review" of that agency action. 5 U.S.C. § 702. The agency action must also be "final." *See id.* at § 704. Two conditions must be met in order for an agency action to be considered final: (1) "the action must mark the 'consummation' of the agency's decisionmaking process," and (2) "the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). "The finality inquiry . . . is a 'flexible' and 'pragmatic' one." *Air Brake Sys., Inc. v. Mineta*, 357 F.3d 632, 638 (6th Cir. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149–50 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99, 105 (1977)).

**1. Consummation of the Agency's Decision-making Process**

In order to mark the consummation of the administrative process, the decision must not be "of a merely tentative or interlocutory nature." *Bennett*, 520 U.S. at 177. In *Jama*, we concluded that the agency's denial of an application for adjustment of status was not the consummation of the agency's decision-making process because "removal proceedings [were] ongoing" at the time of the action. 760 F.3d at 496. We also recognized that removal proceedings were a necessary occurrence because Jama's refugee status had been terminated. *Id.* (noting that removal proceedings "necessarily follow[] a decision to terminate an alien's refugee status").

The district court in the present case relied on *Jama* to conclude that the agency's denial of Hosseini's application for adjustment of status was not the consummation of the agency's decision-making process. But there is one critical distinction between *Jama* and the present

case—here, no removal proceedings are ongoing and no removal proceedings will necessarily follow because Hosseini's asylee status has not been terminated. *See Cabaccang v. U.S. Citizenship & Immigration Servs.*, 627 F.3d 1313, 1317 (9th Cir. 2010) (noting that for the purposes of adjudicating immigration claims in the APA context, the distinction between cases where removal proceedings are pending and cases where removal proceedings are not pending is "crucial"). The applicant in *Jama* was certain to have the opportunity to seek judicial review of the non-discretionary decisions underlying the denial of his application to adjust status during his removal proceedings. *See Jama*, 760 F.3d at 496. An applicant who is not in removal proceedings, and who may never have removal proceedings, has no opportunity to receive that judicial review. Therein lies the difference between *Jama* and the present case. Thus, we must decide whether the denial of an application to adjust status is a final agency action within the meaning of the APA when no removal proceedings are pending. This court has not previously addressed this question, but some of our sister circuits have. *See Cabaccang*, 627 F.3d at 1317; *Pinho v. Gonzales*, 432 F.3d 193, 202 (3d Cir. 2005); *but see Ibarra v. Swacina*, 628 F.3d 1269, 1270 n.2 (11th Cir. 2010) (saving the question for another day).

The Third Circuit's opinion in *Pinho v. Gonzales*, 432 F.3d 193 (3d Cir. 2005), is particularly instructive. In that case, the court held that the agency's denial of an application for adjustment of status was final within the meaning of the APA, because no removal proceedings were pending. *Id.* at 200–01. Pinho had applied for adjustment of his immigration status to "permanent resident" under 8 U.S.C. § 1255. *Id.* at 197. The Immigration and Naturalization Service ("INS") denied adjustment after finding that Pinho was inadmissible for having pled guilty to a crime relating to a controlled substance. *Id.* However, no removal proceedings were instituted against Pinho. *See id.* at 201. Thereafter, Pinho filed a complaint in federal district court seeking a declaratory judgment that the denial of his adjustment of status was arbitrary, capricious, and unlawful. *Id.* at 198. The district court denied Pinho's request on the merits, and he appealed. *Id.* at 198–99.

On appeal, the Third Circuit pointed out the unique posture of the case—there had been "no hearing before an Immigration Judge" and "no appeal to the [Board of Immigration Appeals]." *Id.* at 200. And "[i]f the agency institutes removal proceedings against" Pinho at

some future time, he could renew his application during those proceedings. *See id.* at 200–01. However, the court found the hypothetical possibility of future removal proceedings insufficient to render the agency's determination tentative or interlocutory. *Id.* The court reasoned that "if the agency does not seek to deport [Pinho], there can never be an appeal within the agency by which any higher level of administrative authority can be invoked to review the legal determination made by the" agency. *Id.* at 201. Additionally, because Pinho had no other avenue for administrative appeal,[7] "Pinho had no further opportunity to challenge the legality of the decision within the agency." *Id.* An applicant should not be "forced to await deportation proceedings that the agency may or may not choose to institute." *Id.*

To make matters worse, "[t]he decision of whether or not to institute deportation proceedings is entirely within the discretion of the agency." *Id.* at 202. Namely, "[t]here are no steps that Pinho can take to force the question in order to have his claim resolved." *Id.* Foreclosing review of Pinho's claim would mean that "the agency retains sole control over whether an individual's purely legal claim—one which has not been made non-reviewable by statute—may ever be brought before the courts." *See id.* "Such a result would be plainly at odds not only with the APA, but also with broader principles of separation of powers." *Id.* Therefore, the Third Circuit held that the agency's decision denying Pinho's adjustment of status application was deemed final because there were "no deportation proceedings pending in which the decision might be reopened or challenged." *Id.*

Like the applicant in *Pinho*, Hosseini filed an application for adjustment of status which was ultimately denied. Hosseini also sought review of the decision in the district court, and no removal proceedings were instituted against him. The government on appeal argues that because the agency can elect to institute removal proceedings against Hosseini at some future time, the agency's denial of his application is tentative, not final. Like the Third Circuit, we find this argument unavailing. Here, removal proceedings are not even possible at this time because Hosseini's asylum status has not been terminated. *See* 8 U.S.C. § 1158(c)(1)(A) (stating that an alien granted asylum "shall not" be removed). Accepting the government's argument would lead

---

[7]Applicants are not permitted to appeal the denial of an adjustment of status application to the Board of Immigration Appeals. *See* 8 C.F.R. § 245.2(a)(5)(ii).

to the perverse result rejected in *Pinho*:  The agency would retain "sole control over whether [Hosseini's] purely legal claim—*one which has not been made non-reviewable by statute*—may ever be brought before the courts."  *See Pinho*, 432 F.3d at 202 (emphasis added).

We are also not persuaded by the government's argument that Hosseini can merely re-apply for admission as often as he wants; this approach suffers from the same flaw—"there can never be an appeal within the agency by which any higher level of administrative authority can be invoked to review the legal determination."  *See id.* at 201.  In other words, the government's argument that Hosseini can simply "try again" fails to appreciate that even if Hosseini receives four or five denials, he would never receive meaningful review of any of them.  And given that the agency took over twelve years to adjudicate Hosseini's first application, and even then only after forced to do so by court order, the strength of the government's "try again" argument is all the more diminished.

For these reasons, we hold that where no removal proceedings are pending, the agency's denial of an application for status adjustment under § 1159 marks the consummation of the agency's decision-making process.  *See Pinho*, 432 F.3d at 202; *see also Cabaccang*, 627 F.3d at 1317 ("Without a pending removal proceeding, a denial of status adjustment is final because there is no appeal to a superior administrative authority."); *but cf. Lee v. U.S. Citizenship & Immigration Servs.*, 592 F.3d 612, 621 (4th Cir. 2010) (disagreeing with *Pinho* on jurisdictional grounds regarding an application for adjustment of status under § 1255, a statutory provision not applicable here).[8]

### 2.  Rights or Obligations Have Been Determined

Next, we must decide whether the agency's action determined Hosseini's rights or obligations.  *See Bennett*, 520 U.S. at 177–78.  In this case, the government itself cited various rights that Hosseini is deprived of as a result of the denial of an application for adjustment of status—he is denied the right to live permanently in the United States; he is denied the right to

---

[8]While *Pinho* dealt with an application for adjustment of status under § 1255, here, Hosseini sought an adjustment of status under § 1159.  Both statutes give the Attorney General and Secretary of Homeland Security discretion to grant or deny an adjustment of status application.  *Compare* 8 U.S.C. § 1255 *with* 8 U.S.C. § 1159. However, § 1255 is expressly listed in § 1252(a)(2)(B)(i)'s judicial review bar, while § 1159 is not.  *See* 8 U.S.C. § 1252(a)(2)(B)(i).  Our decision is limited to the facts before us, which deal exclusively with § 1159.

apply for and be granted naturalization, and he is denied a "green card," which would reflect his right to live and work in the United States permanently. *See* Appellee Br. at 10 n.5. Accordingly, we hold that rights or obligations have been determined. *See Pinho*, 432 F.3d at 203 (holding that the ineligibility determination itself had "clear adverse effects").

## III. CONCLUSION

For the foregoing reasons, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.